STATE of Wisconsin, Plaintiff-Appellant,

v.

Edward Terrell JENNINGS, Defendant-Respondent.

Supreme Court

*No. 00–1680–CR. Oral argument October 3, 2001.—Decided May 1, 2002.*

2002 WI 44

(Also reported in 647 N.W.2d 142.)

229

231

For the plaintiff-appellant the cause was argued by *Gregory M. Weber,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-respondent there was a brief and oral argument by *Margaret A. Maroney,* assistant state public defender.

¶ 1. DIANE S. SYKES, J. This is an interlocutory appeal of a circuit court order suppressing the defendant's custodial statement in which he implicated himself in a homicide. The circuit court concluded that the defendant's statement was made after he invoked his right to counsel under *Miranda v. Arizona,* 384 U.S. 436 (1966). The court's order was based primarily on *Wentela v. State,* 95 Wis. 2d 283, 290 N.W.2d 313 (1980), a decision of this court that the State asserts has been effectively overruled by the United States Supreme Court's decision in *Davis v. United States,* 512 U.S. 452 (1994).

¶ 2. The court of appeals certified the case to us on the question of "whether the court of appeals may, must, or must not follow a decision of the Wisconsin Supreme Court which is directly on point, but which appears to conflict with subsequent precedent from the United States Supreme Court."

¶ 3. We conclude that when confronted with a direct conflict between a decision of this court and a later decision of the United States Supreme Court on a matter of federal law, the court of appeals may, but is not required to, certify the case to us pursuant to Wis. Stat. § 809.61. If it does not, or if this court declines to

accept certification, the Supremacy Clause of the United States Constitution compels adherence to United States Supreme Court precedent on matters of federal law, although it means deviating from a conflicting decision of this court.

¶ 4. The underlying substantive issue in the case concerns the sufficiency of the defendant's request for counsel during his custodial interrogation—more specifically, whether his statement, "I think maybe I need to talk to a lawyer," unequivocally invoked his right to counsel such that any subsequent statements must be suppressed. In *Wentela*, 95 Wis. 2d at 292, we held that the statement, " 'I think I need an attorney,' or 'I think I should see an attorney,' " constituted a sufficient request for counsel. In *State v. Walkowiak*, 183 Wis. 2d 478, 486–87, 515 N.W.2d 863 (1994), we further held that when a suspect makes an equivocal reference to counsel—there, it was the question "Do you think I need an attorney?"—then "[t]he police must cease all interrogation, except they may attempt to clarify the suspect's desire for counsel."

¶ 5. The validity of both holdings—what constitutes a sufficient request for counsel and the obligations of the police when an ambiguous or equivocal request is made—was called into question by the Supreme Court's decision in *Davis*. There, the Supreme Court concluded that the statement "Maybe I should talk to a lawyer" was equivocal and therefore not sufficient to invoke the right to counsel under the Fifth Amendment. *Davis*, 512 U.S. at 459–62. The Court further held that when a suspect makes an ambiguous or equivocal reference to counsel, the police need neither cease questioning nor clarify the suspect's desire for counsel, although the Court did say that the latter "will often be good police practice." *Id.* at 461.

233

¶ 6. The Supreme Court's decision in *Davis* means that *Wentela* and *Walkowiak* are no longer valid as a matter of Fifth Amendment law, and we therefore overrule them. We also decline, in this instance, to interpret the Wisconsin Constitution's right against self-incrimination more broadly than the federal constitutional right. Accordingly, we reverse the circuit court's suppression order.

I

¶ 7. On June 25, 1999, defendant Edward Jennings was arrested in Loves Park, Illinois, in connection with a Rock County, Wisconsin, homicide investigation. After Jennings' arrest, two officers from the City of Beloit Police Department, Detectives Kreitzmann and Anderson, went to Loves Park to interview Jennings.

¶ 8. Detective Kreitzmann advised Jennings of his constitutional rights pursuant to *Miranda* and obtained a valid waiver of those rights. Detective Kreitzmann, interviewing Jennings alone, began questioning him about the Rock County homicide. Jennings, who is blind, initially denied any knowledge or involvement. After further questioning, Jennings admitted that he was present at the scene when the homicide occurred and that he had heard three gunshots.

¶ 9. When Detective Kreitzmann asked Jennings if he would put the statement in writing, Jennings replied, "I think maybe I need to talk to a lawyer." Detective Kreitzmann immediately asked Jennings, "Are you telling me you want a lawyer?" Jennings responded with the same statement: "I think maybe I need to talk to a lawyer." Detective Kreitzmann testified that at that point, because he was unable to clarify whether Jennings was specifically asking for an attor-

ney, and "to be on the safe side," he stopped questioning Jennings and left the interrogation room.

¶ 10. Approximately 15 minutes later, Detective Anderson entered the room and began to question Jennings. Detective Anderson first asked Jennings if he remembered his *Miranda* warnings. Jennings replied that he did. Detective Anderson also asked Jennings if he would be willing to speak with him. Jennings said that he would. During the questioning by Detective Anderson, Jennings again placed himself at the scene of the crime, and implicated himself in the homicide by describing a confrontation between himself, the victim, and several other people that immediately preceded the shooting. Jennings did not ask for a lawyer at any time during Detective Anderson's questioning.

¶ 11. Jennings was charged with being party to the crime of first-degree intentional homicide in violation of Wis. Stat. §§ 940.01(1) and 939.05 (1999–2000)[1] Jennings moved to suppress the statement he made to Detective Anderson, claiming that it was given after he had invoked his right to counsel. The Rock County Circuit Court, John W. Roethe, Judge, granted the motion, concluding that Jennings had unambiguously invoked his right to counsel, and citing *Davis, Wentela,* and *State v. Long,* 190 Wis. 2d 386, 526 N.W.2d 826 (Ct. App. 1994). The State appealed pursuant to Wis. Stat. § 974.05(1)(d)2 and 3, and the court of appeals certified the case to us.

II

¶ 12. In its certification order, the court of appeals has essentially asked for guidance in resolving the

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

problem of a direct conflict between a controlling decision of this court and a subsequent decision of the United States Supreme Court. The State and the defendant suggest a procedural solution: a rule requiring the court of appeals to certify to this court, pursuant to Wis. Stat. § 809.61, any case that presents a conflict between our precedent and a subsequent decision of the United States Supreme Court.

¶ 13. We clearly have the power to impose such a rule. Article VII, Section 3 of the Wisconsin Constitution expressly confers upon this court superintending and administrative authority over the lower state courts.[2] The constitutional grant of superintending and administrative authority "is a grant of power. It is unlimited in extent. It is indefinite in character." *State ex rel. Fourth National Bank of Philadelphia v. Johnson,* 103 Wis. 591, 611, 79 N.W. 1081 (1899).

¶ 14. Article VII, Section 3 has been described as establishing "a duty of the supreme court to exercise . . . administrative authority to promote the efficient and effective operation of the state's court system." *In re Grady,* 118 Wis. 2d 762, 783, 348 N.W.2d 559 (1984). Accordingly, within this administrative power and duty, is "the inherent power to adopt those statewide measures which are absolutely essential to the due administration of justice in the state." *In re Kading,* 70 Wis. 2d 508, 518, 235 N.W.2d 409 (1975).

■

¶ 15. Although unquestionably broad and flexible, our superintending authority will not be invoked lightly. *In re Phelan,* 225 Wis. 314, 321, 274 N.W. 411

---

[2] Article VII, Section 3, subsection 1 of the Wisconsin Constitution states: "The supreme court shall have superintending and administrative authority over all courts."

(1937); *see also Arneson v. Jezwinski,* 206 Wis. 2d 217, 226, 556 N.W.2d 721 (1996); *State v. Kendall,* 94 Wis. 2d 63, 66, 287 N.W.2d 758 (1980); *McEwen v. Pierce County,* 90 Wis. 2d 256, 269–70, 279 N.W.2d 469 (1979). Whether this court in a given situation will exercise its superintending authority is a matter of "judicial policy rather than one relating to the power of this court." *Phelan,* 225 Wis. at 320.

¶ 16. We decline to exercise our superintending authority to interpose a rule requiring certification of all cases that present a conflict between our precedent and subsequent United States Supreme Court precedent. Requiring certification would interfere with the discretion of the court of appeals in its power to decide cases before it, including the decision whether or not to certify a case to this court. *See Phelan,* 225 Wis. at 320 (superintending authority generally will not be exercised to interfere with the discretion of another court).

¶ 17. While we decline to establish a rule requiring it, certification will certainly be highly appropriate in a case such as this, in which a controlling decision of this court has arguably been overruled by a subsequent decision of the United States Supreme Court. Only this court may "overrrule, modify or withdraw language from a previous [state] supreme court case." *In re Cook v. Cook,* 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997); *see also State v. Grawien,* 123 Wis. 2d 428, 432, 367 N.W.2d 816 (Ct. App. 1985).

¶ 18. But certification need not be mandatory, because the Supremacy Clause of the United States Constitution governs the outcome of any direct conflict between state and federal supreme court precedent on a matter of federal law, regardless of whether the conflict

is resolved in the court of appeals or here.[3] All state courts, of course, are bound by the decisions of the United States Supreme Court on matters of federal law. *See State v. Mechtel,* 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993); *see also United Sates ex rel. Lawrence v. Woods,* 432 F.2d 1072 (7th Cir. 1970).

¶ 19. Accordingly, the court of appeals may, in its discretion, and pursuant to Wis. Stat. § 809.61, certify to this court a case that presents a conflict between a decision of this court and a subsequent decision of the United States Supreme Court on a matter of federal law. If it declines to do so, or if this court declines to accept certification of such a case, the court of appeals must necessarily adhere to the subsequent United States Supreme Court decision, although it means deviating from the conflicting earlier decision of this court. The court of appeals must not follow a decision of this court on a matter of federal law if it conflicts with a subsequent controlling decision of the United States Supreme Court.[4] *See e.g., Long,* 190 Wis. 2d at 396; *State v. Whitaker,* 167 Wis. 2d 247, 261, 481 N.W.2d 649 (Ct. App. 1992).

---

[3] Article VI, Clause 2 of the United States Constitution states: "This constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding."

[4] The court of appeals, like this court, independently determines state constitutional claims. *See infra* ¶¶ 37–42.

III

■

¶ 20. The substantive issue in this case concerns the sufficiency of the defendant's invocation of his right to counsel mid-way through his custodial interrogation. This is a question of constitutional fact that we review under a two-part standard. *State v. Henderson,* 2001 WI 97, ¶ 16, 245 Wis. 2d 345, 629 N.W.2d 613. We uphold the circuit court's findings of historical or evidentiary fact unless they are clearly erroneous. *Id.* We review independently the lower court's application of constitutional principles to those evidentiary facts. *Id.*

¶ 21. In *State v. McMorris,* 213 Wis. 2d 156, 570 N.W.2d 384 (1997), a Sixth Amendment right to counsel case, we discussed the rationale for the two-part standard of review applicable to questions of constitutional fact:

> Questions of constitutional fact are sometimes referred to as mixed questions of fact and law, requiring the court to determine what happened and whether the facts found fulfill a particular legal standard. Ordinarily, when reviewing a mixed question of fact and law, appellate courts engage in a two-part inquiry. The first inquiry relates to the circuit court's findings of fact. Neither the court of appeals nor this court will reverse a circuit court's findings of historical or evidentiary fact unless they are clearly erroneous. The second inquiry relates to the question whether the historical or evidentiary facts satisfy the relevant constitutional standard. Such an inquiry is made by this court independent of the circuit court and court of appeals. However, in deciding whether the facts satisfy the constitutional standard this court may benefit from and draw upon the reasoning of the circuit court and court of appeals and may draw upon the circuit court's observational

advantage. Nevertheless, this court independently measures the facts against a uniform constitutional standard.

The principal reason for independent appellate review of matters of constitutional fact is to provide uniformity in constitutional decision making. In applying the skeletal constitutional rule, appellate courts flesh out the rule and provide guidance to litigants, lawyers, and trial and appellate courts.

*Id.* at 165–66 (footnotes omitted).

¶ 22. There is no dispute in this case that Jennings was properly advised of his rights under *Miranda* and that he voluntarily waived his right to remain silent and agreed to be questioned by Beloit Police Detectives Kreitzmann and Anderson without an attorney present. The central evidentiary findings relevant to the suppression motion concern the circumstances surrounding Jennings' mid-interrogation statement to Detective Kreitzmann, "I think maybe I need to talk to a lawyer."

¶ 23. According to the circuit court's written factual findings, Jennings made the reference to a lawyer after Detective Kreitzmann asked if he would be willing to put his verbal statement in writing. When Jennings said, "I think maybe I need to talk to a lawyer," Detective Kreitzmann "tried to clarify if the defendant was asking for an attorney, and could never get the defendant to give a definitive yes or no answer as to whether he wanted an attorney." Detective Kreitzmann then terminated the interrogation "because he decided to take the safe route." Finally, "about fifteen minutes later, Detective Anderson began questioning the defen-

240

dant." These findings of historical fact are not clearly erroneous (no one argues that they are), and we therefore uphold them.

¶ 24. The real dispute here is whether these historical facts are sufficient to establish an unequivocal request for counsel such that Jennings' subsequent statements to Detective Anderson must be suppressed. Applying *Davis, Wentela* and *Long,* the circuit court concluded that Jennings' statement, "I think maybe I need to talk to a lawyer," was sufficient to constitute an unambiguous request for counsel.

¶ 25. Jennings characterizes this as a finding of evidentiary or historical fact entitled to deference. It is not. The legal sufficiency of a defendant's invocation of the right to counsel during a custodial interrogation is determined by the application of a constitutional standard to historical facts. As noted above, an appellate court independently measures the historical facts against a uniform constitutional standard, benefiting from, but not deferring to, the circuit court's decision. *See e.g., Long,* 190 Wis. 2d at 393–97; *State v. Esser,* 166 Wis. 2d 897, 904, 480 N.W.2d 541 (Ct. App. 1992).

¶ 26. The constitutional standards applicable here derive from *Miranda, Edwards v. Arizona,* 451 U.S. 477 (1981), and *Davis.* In *Miranda,*[5] the United States Supreme Court recognized the right to have counsel present during custodial interrogation to safeguard the right against compulsory self-incrimination

---

[5] The United States Supreme Court has recently reaffirmed that *Miranda v. Arizona,* 384 U.S. 436 (1966), established a federal constitutional rule governing the admissibility of custodial statements in both state and federal courts under the Fifth and Fourteenth Amendments. *See, Dickerson v. United States,* 530 U.S. 428, 431 (2000).

under the Fifth and Fourteenth Amendments. *Miranda,* 384 U.S. at 467–74. In *Edwards,* the Supreme Court held that the police must immediately cease questioning a suspect who clearly invokes the *Miranda* right to counsel at any point during custodial interrogation. *Edwards,* 451 U.S. at 484–85. The Court in *Edwards* concluded that "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Id.* at 485.

¶ 27. While the Supreme Court in *Edwards* established a bright-line, no-further-questioning rule applicable to clear and unequivocal requests for counsel during custodial interrogation, it did not address the subject of requests for counsel that were not so clear and unequivocal. Thirteen years later it did so, in *Davis.*

¶ 28. The case arose in the context of a Navy court martial. Robert Davis was under investigation by the Naval Investigative Service (NIS) for the beating death of another sailor. *Davis,* 512 U.S. at 454. He was interviewed by NIS agents and, after being advised of his rights consistent with *Miranda* and the Uniform Code of Military Justice, waived his right to remain silent and his right to counsel. *Id.* at 454–55. After about an hour and a half of questioning he said, "Maybe I should talk to a lawyer." *Id.* at 455. The NIS investigators attempted to clarify Davis's statement, and Davis responded, "No, I'm not asking for a lawyer." *Id.* Davis then continued to answer questions for about another hour. *Id.* He then said, "I think I want a lawyer before I say anything else." *Id.* The NIS agents then stopped all questioning. *Id.*

¶ 29. Davis moved to suppress his statement. The military judge denied the motion, Davis was convicted,

and both the Navy-Marine Corps Court of Military Review and the Court of Military Appeals affirmed. *Id.* at 455–56. The Supreme Court granted certiorari and held that a suspect must clearly and unambiguously request counsel in order for the *Edwards* rule to apply. *Id.* at 458–59. "If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* at 459.

¶ 30. The Supreme Court emphasized that the inquiry is an objective one. *Id.* "Although a suspect need not 'speak with the discrimination of an Oxford don,' *post,* at 476 (Souter, J., concurring in judgment), he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* Any lower standard " 'would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity.' " *Id.* at 460 (citing *Michigan v. Mosley,* 423 U.S. 96, 102 (1975)).

¶ 31. The Supreme Court declined to extend *Edwards* to require officers to stop an interrogation when a suspect makes *any* reference to an attorney. *Davis,* 512 U.S. at 459–60. In addition, the Supreme Court refused to adopt a requirement that officers must ask clarifying questions to resolve an ambiguous reference to counsel. *Id.* at 461. "[W]hen a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Id.* But the Court was "unwilling to create a third layer of prophylaxis to prevent police questioning when the

suspect *might* want a lawyer. Unless the suspect actually requests an attorney, questioning may continue." *Id.* Davis's statement, "Maybe I should talk to a lawyer," was not a clear and unequivocal request for counsel, and his conviction was affirmed. *Id.* at 462.

¶ 32. The two holdings of *Davis*—that officers need neither stop an interrogation nor ask clarifying questions when a suspect makes an equivocal request for counsel—effectively overrule two prior decisions of this court, at least as a matter of federal constitutional law.[6] In *Wentela,* a post-*Miranda,* pre-*Edwards* case, we held that the defendant's statement "I think I need an attorney" or "I think I should see an attorney" constituted a sufficient request for counsel. *Wentela,* 95 Wis. 2d at 292. We declined, however, to adopt a per se rule requiring the police to cease questioning a suspect who invokes his right to counsel, borrowing instead from the more flexible approach of *Michigan v. Mosley,* 423 U.S. 96, a "right to remain silent" case. *Wentela,* 95 Wis. 2d at 293–95; *see also Leach v. State,* 83 Wis. 2d 199, 265 N.W.2d (1978).

---

[6] The dissent notes several times that *Davis v. United States,* 512 U.S. 452 (1994) was decided by a 5–4 vote, as if to suggest that the margin by which a divided high court decides a case has some legal significance. The dissent apparently concedes that *Davis* is binding as a matter of federal constitutional law, but seems to suggest that the one-vote margin lends support for interpreting the Wisconsin Constitution to require greater protection for suspects in custodial interrogations. Dissent at ¶¶ 52–53. While the Wisconsin Constitution may indeed in particular instances provide greater protection for individual rights than its federal counterpart (*see infra* Part IV), the margin by which the United States Supreme Court decides the corresponding federal constitutional issue is irrelevant to our analysis of whether the state constitution requires more.

¶ 33. A year after *Wentela* was decided, *Edwards* established the bright-line rule requiring cessation of questioning when a suspect clearly requests counsel, effectively supplanting the latter holding of *Wentela.* Similarly, the former holding of *Wentela*—that the statement "I think I need an attorney" or "I think I should see an attorney" is sufficient to invoke the right to counsel—has been overruled by the conclusion in *Davis* that the nearly identical statement, "Maybe I should talk to a lawyer" is equivocal and therefore insufficient for purposes of the *Edwards* rule. Accordingly, based upon *Edwards* and *Davis,* we hereby expressly overrule *Wentela* in its entirety.

¶ 34. *Davis* also undermines our decision in *Walkowiak.* There, we held that the defendant's statement, "Do you think I need an attorney?" was equivocal and therefore insufficient to invoke the right to counsel. *Walkowiak,* 183 Wis. 2d at 479. We then adopted a rule that when a suspect makes an equivocal or ambiguous reference to counsel, "[t]he police must cease all interrogation, except they may attempt to clarify the suspect's desire for counsel. Interrogation may not begin anew until the ambiguity is resolved." *Id.* at 486–87.

¶ 35. Our decision in *Walkowiak* was tethered to the Fifth and Fourteenth Amendments and *Miranda/Edwards* jurisprudence up to that point. *Davis* was decided a month later. The following year, we acknowledged the conflict between *Walkowiak* and

*Davis,* but did not explicitly overrule *Walkowiak.*[7] *See State v. Jones,* 192 Wis. 2d 78, 95 n.4, 532 N.W.2d 79 (1995). We now do so.

■

¶ 36. Applying *Davis,* we conclude that Jennings' statement to Detective Kreitzmann, "I think maybe I need to talk to a lawyer," was substantially equivalent to Davis's statement, "Maybe I should talk to a lawyer." As such, it was "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." *Davis,* 512 U.S. at 459. Therefore, Jennings' statement was insufficient to invoke his right to counsel under the Fifth and Fourteenth Amendments, and the officers were not required to cease questioning him. Nor were they required to clarify his statement. Accordingly, there is no federal constitutional impediment to the admission of Jennings' statement to Detective Anderson.

## IV

¶ 37. Finally, we are invited to interpret the Wisconsin Constitution's right against self-incrimination more broadly than the federal right, and establish a state constitutional rule requiring the police to clarify ambiguous references to counsel during custodial interrogations. This implicates "[i]ssues of federalism and sovereignty," since "[t]he holdings of the United States

[7] *See State v. Jones,* 192 Wis. 2d 78, 111, 532 N.W.2d 79 (1995) (Abrahamson, J., dissenting) ("The Supremacy Clause dictates that the *Davis* interpretation of the federal constitution is binding on all courts of this state. Thus, although the majority neglects to acknowledge it, *Walkowiak* has been superseded by *Davis.*").

Supreme Court do 'not affect the State's power to impose higher standards . . . than required by the Federal Constitution if it chooses to do so.' " *State v. Ward,* 2000 WI 3, ¶ 54, 231 Wis. 2d 723, 604 N.W.2d 517 (quoting *Cooper v. California,* 386 U.S. 58, 62 (1967)).

¶ 38. We have said that "[t]his court . . . will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizens' liberties ought to be afforded." *State v. Doe,* 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977). We have further recognized that it is "our responsibility to examine the State Constitution independently. This duty exists even though our conclusions in a given case may not differ from those reached by the [United States] Supreme Court when it interprets" the federal constitution. *Ward,* 2000 WI 3, ¶ 59.

¶ 39. However, we have also noted that any decision to engage in an upward departure from the federal constitutional standards adopted by the United States Supreme Court for purposes of our own state constitutional law must itself be grounded in requirements found in the state constitution or laws. *State v. Agnello,* 226 Wis. 2d 164, 180–81, 593 N.W.2d 427 (1999). "Where . . . the language of the provision in the state constitution is 'virtually identical' to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution." *Id.* (citing *State v. Tompkins,* 144 Wis. 2d 116, 133, 423 N.W.2d 823 (1988)).

247

¶ 40. The state constitutional right against compulsory self-incrimination is textually almost identical to its federal counterpart.[8] In *Agnello,* we concluded that because the two provisions were "nearly identical," the state constitution did not require that the voluntariness of a confession be proven beyond a reasonable doubt when the United States Supreme Court had required only the lower preponderance standard for determining compliance with *Miranda. Id.* at 181–82.

¶ 41. Similarly, in *State v. Sorenson,* 143 Wis. 2d 226, 259–60, 421 N.W.2d 77 (1988), we declined to expand our state constitutional jurisprudence beyond the requirements of the federal constitution on the issue of a prosecutor's cross-examination and closing argument comment on a defendant's post-arrest silence when a defendant testifies in his own defense:

> The defendant further argues that art. I, sec. 8 of the Wisconsin Constitution, which protects against self-incrimination, might be interpreted more liberally than federal fifth amendment provisions to shield his silence. In the past, our cases interpreting the right to remain silent have paralleled federal analysis used for the United States Constitution and Amendments. . . . Further, in comparing the language of the federal self-incrimination provision with that of the Wisconsin section, we note the federal amendment uses the word "shall," while the Wisconsin Constitution uses the word,

---

[8] Article I, Section 8, subsection (1) provides: "No person may be held to answer for a criminal offense without due process of law, and no person for the same offense may be put twice in jeopardy of punishment, nor may be compelled in any criminal case to be a witness against himself or herself." The Fifth Amendment to the United States Constitution provides, in relevant part, "No person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."

"may." While both protect against self-incrimination there can be no logical argument that the state constitutional provision creates a broader right since the language of the Wisconsin Constitution is certainly no stronger than that used in the United States Constitution. As a result, we find no basis for interpreting state constitutional language beyond the articulated scope of federal constitutional guarantees in this case.

*Id.* at 259–60 (citations and footnotes omitted).

■

¶ 42. The same analysis applies here. We cannot discover any meaningful difference between the state and federal constitutional protections against compulsory self-incrimination that would justify or require a "third layer of prophylaxis" that the United States Supreme Court has found unnecessary. We agree with Justice O'Connor's observation in *Davis* that the police are well-advised to clarify a suspect's ambiguous reference to counsel, in order to "protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and . . . minimize the chance of a confession being suppressed due to subsequent judicial second-guessing. . . . " *Davis*, 512 U.S. at 461. We decline, however, to impose a clarification requirement as a matter of state constitutional law.[9]

---

[9] The dissent would invoke our superintending authority to impose a requirement that law enforcement officers ask clarifying questions when a suspect makes an equivocal reference to counsel. Dissent at ¶ 55. We have superintending authority over the lower courts, *not* over law enforcement. *See,* Wis. Const. art. VII, § 3(1), *supra*, at n.2. On the substantive state constitutional question, the dissent relies entirely on *Carpenter v. Dane Co.,* 9 Wis. 249 (1859), which interpreted the state constitutional right to counsel to include the right to counsel at public expense for indigent criminal defendants. Dissent at

## V

¶ 43. Accordingly, we conclude that the court of appeals may, but need not necessarily, certify to this court a case that presents a direct conflict between a decision of this court and a subsequent decision of the United States Supreme Court on a matter of federal law. The Supremacy Clause of the United States Constitution requires all state courts to adhere to United States Supreme Court precedent on matters of federal law, although it means deviating from a conflicting decision of this court. We overrule both *Wentela* and *Walkowiak* in light of *Davis,* and decline to adopt a state constitutional rule requiring the police to cease an interrogation and clarify a suspect's equivocal or ambiguous reference to counsel, but note that it is better practice for the police to do so.

¶ 44. Because Jennings' statement to Detective Kreitzmann, "I think maybe I need to talk to a lawyer," was equivocal under *Davis* and therefore insufficient to invoke his right to counsel under *Edwards* and *Miranda,* the officers were not constitutionally required to stop questioning him, nor were they required to clarify his intentions regarding counsel. We reverse the circuit court's order granting Jennings' suppression motion, and remand for further proceedings.

¶ 62. The dissent suggests that this state constitutional right to counsel at trial would be rendered meaningless if law enforcement officers are not required to clarify a suspect's equivocal reference to counsel during custodial interrogation. Dissent at ¶ 67. The premise seems to be that a confession assures conviction and therefore eviscerates the right to counsel at trial. This analysis is a little indirect, and takes the focus off the constitutional right at issue here, the right against self-incrimination.

*By the Court.*—The order of the Rock County Circuit Court is reversed and the cause is remanded.

¶ 45. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). Relying on a five-justice opinion in *Davis v. United States,* 512 U.S. 452 (1994), this court's majority opinion disregards Wisconsin jurisprudence dating back to 1859,[1] and overrules two Wisconsin cases.[2]

¶ 46. The majority opinion holds that when a suspect makes an equivocal request for an attorney during custodial questioning, law enforcement officers can continue the questioning as if the suspect had said nothing about an attorney.

¶ 47. I dissent for three reasons: The majority opinion contravenes concepts of federalism and state sovereignty; Wisconsin's rule requiring law enforcement officers to clarify a suspect's equivocal request for an attorney is the prudent rule; and Wisconsin constitutional jurisprudence supports interpreting the Wisconsin Constitution as requiring law enforcement officers to clarify a suspect's equivocal request for an attorney. I cannot join an opinion that undermines the interests of law enforcement to safeguard confessions from suppression by a court. I cannot join an opinion that jeopardizes the right of a suspect to an attorney and a full and fair trial. And I cannot join an opinion that ignores more than 140 years of Wisconsin law.

I

¶ 48. The U.S. Supreme Court has made it clear that the *Miranda* safeguards were not intended to

---

[1] *Carpenter v. Dane County,* 9 Wis. 249 (1859).

[2] *Wentala v. State,* 95 Wis. 2d 283, 290 N.W.2d 313 (1980); *State v. Walkowiak,* 183 Wis. 2d 478, 515 N.W.2d 863 (1994).

251

create a constitutional straitjacket hindering state efforts at reform. Rather, the Court encouraged states to "continue their laudable search for increasingly effective ways of protecting the rights of the individual while promoting efficient enforcement of our criminal laws."[3]

¶ 49. Under our system of federalism and state sovereignty, the U.S. Supreme Court has tossed the ball back to each state court to determine whether the state should require, as a matter of state constitutional law or as a matter of a state supreme court's superintending authority, that law enforcement officers clarify a suspect's equivocal request for an attorney. This court has, in my opinion, now fumbled that ball.

## II

¶ 50. The Wisconsin rule requiring law enforcement officers to clarify a suspect's equivocal request for an attorney is generally accepted as the prudent rule to protect suspects who do not have a confident command of the English language or do not assert themselves.[4]

¶ 51. In *Davis,* during custodial interrogation the suspect said "Maybe I should talk to a lawyer." The federal officers in *Davis* questioned the suspect to clarify whether he wanted an attorney. The suspect then unequivocally stated that he was not asking for an attorney. The questioning continued. The suspect argued before the U.S. Supreme Court that questioning should have stopped at his equivocal request for an attorney. The U.S. Supreme Court rejected the suspect's argument and held that questioning did not have to cease at the equivocal request.

---

[3] *Miranda v. Arizona,* 384 U.S. 436, 467 (1966).

[4] *Davis v. United States,* 512 U.S. 452, 469–470, 470 n.4 (1994) (Souter, J., concurring in the judgment).

¶ 52. The five-justice majority in *Davis* declared, in what would probably ordinarily be labeled dicta, that they were not willing to impose a federal constitutional requirement that a law enforcement officer must clarify a suspect's equivocal request for an attorney before continuing the questioning. The four-justice opinion concurring in the judgment concluded that to ensure constitutional rights clarification by a law enforcement officer should be required.[5]

¶ 53. In further dicta, the five-justice majority strongly advocated that law enforcement officers clarify a suspect's equivocal request for an attorney, stating that "it will often be good police practice for the interviewing officers to clarify whether or not [a suspect] actually wants an attorney."[6] The majority opinion in the present case similarly opines. See majority opinion at ¶ 42.

¶ 54. The majority opinion cites no authority for the proposition that it is unwise for law enforcement officers to ask clarifying questions. Indeed, the authors of the seminal work on law enforcement interrogation procedure stated that in light of *Davis,* the "prudent course" for an interrogator to follow after receiving a suspect's equivocal request for an attorney is to clarify the suspect's desires by simply asking whether the suspect wants an attorney.[7]

---

[5] *Davis v. United States,* 512 U.S. 452, 466 (1994) (Souter, Blackmun, Stevens and Ginsburg, J.J., concurring in the judgment).

[6] *Davis v. United States,* 512 U.S. 452, 461 (1994).

[7] Fred E. Imbau, John E. Reid, Joseph P. Buckley, and Brian C. Jayne, *Criminal Interrogation and Confessions* 499 (4th ed. 2001).

¶ 55. I conclude that it is prudent, as a matter of our superintending authority,[8] for this court to require this good practice for the admission of evidence obtained at the custodial interrogation. As the U.S. Supreme Court explained in *Davis,* the practice of clarifying the suspect's equivocal request for an attorney protects the suspect's constitutional rights encompassed in a full and fair trial, assists law enforcement, and ensures the fair administration of justice.

¶ 56. The practice of clarifying the suspect's equivocal request for an attorney will "help protect the rights of the suspect by ensuring that he gets an attorney if he wants one," declared the *Davis* court.[9]

¶ 57. Clarifying the suspect's equivocal request for an attorney, declared the *Davis* court, also "will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding coun-

This text has been described as "written for the purpose of explaining to law enforcement officers the strategies of interrogation and the applicable law." Grace F. Ashikawa, *R. v. Brydges: The Inadequacy of Miranda and A Proposal to Adopt Canada's Rule Calling for the Right for Immediate Free Counsel,* 3 Sw. J.L. & Trade Am. 245 (1996).

[8] See Wis.Const. art. VII, § 3(1); *State v. Anderson,* 2002 WI 7, ¶ 29, n.12, 249 Wis. 2d 586, 638 N.W.2d 301 (discussing superintending authority).

[9] *Davis v. United States,* 512 U.S. 452, 461 (1994). Clarifying questions are not difficult to administer. See *State v. Walkowiak,* 183 Wis. 2d 478, 494–495, 515 N.W.2d 863 (1994) (Abrahamson, J., concurring and dissenting).

sel."[10] Abandoning the rule regarding clarification simply increases the chances that a court will later suppress a confession.[11]

¶ 58. Thus the rule adopted by the majority opinion today puts law enforcement officers at their peril when a suspect has made what might appear to be an equivocal request for an attorney. Continuing questioning without clarifying the suspect's request jeopardizes the admission of a confession or other evidence.

¶ 59. Because the *Davis* rule places law enforcement officers in this predicament and endangers a suspect's constitutional rights, courts have greeted the *Davis* decision "with less than total enthusiasm," according to a leading text in criminal procedure that is often cited by this court.[12] Indeed some state courts, including the supreme court of our neighboring state of Minnesota, have rejected the *Davis* rule.[13]

---

[10] *Davis v. United States,* 512 U.S. 452, 461 (1994).

[11] *Davis v. United States,* 512 U.S. 452, 461 (1994).

[12] Wayne R. LaFave, Jerold H. Israel, & Nancy J. King, *Criminal Procedure* § 6.9(g) at 615, n.170 (2d ed. 1999).

Another commentator stated that "[a]lready several states' highest courts have chosen to circumvent *Davis* and retain their old rules. The confusion and the split among lower courts that existed before Davis has returned, albeit to a somewhat lesser degree." Susan L. Ross, *Davis v. United States: The Ambiguous Request for Counsel,* 30 New Eng. L. Rev. 941, 990 (1996).

[13] *See, e.g., State v. Hannon,* 636 N.W.2d 796, 804 (Minn. 2001) (holding Minnesota constitution requires that when an accused makes an ambiguous or equivocal statement that can reasonably be interpreted as a request for an attorney, questioning must stop except for narrow questions to clarify the suspect's intentions); *State v. Risk,* 598 N.W.2d 642, 649 (Minn. 1999) (same); *Hawaii v. Hoey,* 881 P.2d 504 (Haw. 1994) (adopting Justice Souter's reasoning in the concurring opinion in

¶ 60. Since 1994, Wisconsin law has required that law enforcement officers clarify an equivocal request for an attorney if questioning is to continue.[14] This rule of law has apparently worked well in Wisconsin. The State does not claim that the rule has created any problems for law enforcement officers or that the rule has interfered with criminal investigations. We ought not to abandon our prudent rule in favor of a problematic rule such as the one adopted by the majority opinion.

### III

¶ 61. Finally, more than 140 years of Wisconsin constitutional jurisprudence supports interpreting the Wisconsin constitutional privilege against self-incrimination, Article I, Section 8, to require law enforcement officers to clarify a suspect's equivocal request for an attorney during custodial interrogation. Bounded only by the federal Supremacy Clause, the Wisconsin Constitution stands as our state's primary source of law. This court is the final interpreter of the Wisconsin Constitution. We perform this role with an understanding of the unique experience of Wisconsin law.

¶ 62. The majority opinion ignores Wisconsin jurisprudence by ignoring the state constitutional rights to a full and fair trial which rest, according to the *Carpenter* case, on the right to an attorney and the interaction of that right with the constitutional privilege against self-incrimination.

---

*Davis;* Hawaii's constitution requires that law enforcement officers either cease all questioning or seek non-substantive clarification when a suspect makes an equivocal request for an attorney during custodial interrogation).

[14] *State v. Walkowiak,* 183 Wis. 2d 478, 486–87, 515 N.W.2d 863 (1994).

256

¶ 63. The majority opinion reaches its conclusion by reasoning as follows:

1. The majority opinion states that the privilege against compulsory self-incrimination is almost identical in the texts of the federal and Wisconsin constitutions. I agree.

2. The majority opinion states that the Wisconsin Supreme Court has ordinarily, but not always, construed the Wisconsin Constitution consistent with the U.S. Supreme Court's construction of the U.S. Constitution. I agree.

3. The majority opinion states that no basis exists to interpret the language of the Wisconsin Constitution on the privilege against self-incrimination as creating guarantees beyond the guarantees under the U.S. Constitution. I disagree.

¶ 64. The majority opinion errs because it ignores our own state's constitutional history that provides a basis to interpret the Wisconsin constitutional provision on the privilege against self-incrimination beyond the scope of the U.S. Constitution. The majority opinion fails to examine Wisconsin's history of protecting the state constitutional right to an attorney as the means of ensuring a full and fair trial and the nexus between the right to an attorney at trial and the state constitutional privilege against self-incrimination. The majority opinion has forgotten the admonition of Justice Smith in 1855 urging this court to construe its own state constitution to ascertain its true intent and meaning. "The people then made this constitution, and adopted it as their primary law. The people of other states made for themselves respectively, constitutions which are con-

strued by their own appropriate functionaries. Let them construe theirs—let us construe, and stand by ours."[15]

¶ 65.　Wisconsin has a long and cherished history of protecting an accused's right to an attorney under the Wisconsin Constitution. In 1859, eleven years after statehood, this court declared in *Carpenter v. Dane County*[16] that an accused has a fundamental right to an attorney under the Wisconsin Constitution and required counties to appoint an attorney for indigent felons at government expense. Our court reached this conclusion one hundred and four years before the U.S. Supreme Court recognized a similar federal constitutional right to an attorney in *Gideon v. Wainwright,* 372 U.S. 335 (1963).

¶ 66.　Our court in *Carpenter* reasoned that Wisconsin constitutional rights to a full and fair trial such as "to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf, etc." were meaningless when an accused did not have the ability to exercise those rights by employing an attorney. The court stated:

> And would it not be a little like mockery to secure to a pauper these solemn constitutional guaranties for a fair and full trial of the matters with which he was charged, and yet say to him when on trial, that he must employ his own counsel, who could alone render these guaranties of any real permanent value to him.

> . . . .

---

[15] *Attorney General ex rel. Bashford v. Barstow,* 4 Wis. 567, 785 (1855).

[16] 9 Wis. 249 (1859).

But surely the citizens of a county are vitally more interested in saving an innocent man from unmerited punishment than in conviction of a guilty one.

. . . .

Why this great solicitude to secure him a fair trial if he cannot have the benefit of counsel?[17]

¶ 67. Similar reasoning applies in the present case. According to *Carpenter*, to protect an accused's state constitutional guarantees for a full and fair trial, a suspect is given an attorney at trial at government expense. Following the reasoning in *Carpenter*, the state constitutional guarantees for a fair and full trial and an attorney at trial would be hollow rights if a conviction at trial is already assured because the suspect incriminates himself or herself during custodial questioning.[18] Thus a suspect is given the right to an attorney during custodial questioning to help ensure that an accused gets the benefit of the constitutional guarantee against self-incrimination.[19] A suspect's right to an attorney at custodial questioning to protect the privilege against self-incrimination is thus intricately intertwined with an accused's state constitutional right to a full and fair trial and a meaningful state constitutional right to an attorney at trial.

¶ 68. The state constitutional history protecting a full and fair trial by granting a meaningful right to an attorney is over 140 years old. In keeping with this history, the Wisconsin Constitution guarantee against

---

[17] *Carpenter v. Dane County*, 9 Wis. 249, 251–52 (1859).

[18] *Escobedo v. Illinois*, 378 U.S. 478, 487 (1964).

[19] *Fare v. Michael C.*, 442 U.S. 707, 719 (1979); *Miranda v. Arizona*, 384 U.S. 436, 466 (1966); *Escobedo v. Illinois*, 378 U.S. 478, 487–88 (1964).

self-incrimination should therefore be interpreted to require a clarifying question when a suspect makes an equivocal request for an attorney during custodial questioning. A clarifying question ensures that a suspect who wants an attorney gets an attorney at custodial questioning and thus protects a meaningful right to an attorney at trial and a meaningful fair and full trial. In interpreting the Wisconsin Constitution in this way, this court would appropriately heed Wisconsin's long-standing state constitutional history of guaranteeing an accused the constitutional rights guaranteed by the Wisconsin Constitution.

¶ 69. The gamesmanship of ignoring a suspect's statements regarding an attorney during custodial questioning merely invites the public to view the behavior of law enforcement officers as marked by trickery and deceit and to view Wisconsin constitutional guarantees to the criminally accused with cynicism. The result is a loss of public trust and confidence in law enforcement, the rule of law, and the courts, thereby undermining the credibility of the legal system itself.

¶ 70. In order for law enforcement and the courts to be successful in carrying out their responsibilities, they must have the cooperation, trust, and confidence of the public. The majority opinion undermines that trust and confidence, ignores Wisconsin jurisprudence, and betrays Wisconsin's constitutional guarantees. Therefore, I dissent.

¶ 71. I am authorized to state that Justices WILLIAM A. BABLITCH and ANN WALSH BRADLEY join this opinion.