COURT OF APPEALS
DECISION
DATED AND FILED

August 13, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP99-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2015CF289**

**IN COURT OF APPEALS
DISTRICT III**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

CHAD A. RENIER,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Outagamie County: GREGORY B. GILL, JR., Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Chad Renier, pro se,[1] appeals from a judgment of conviction for two counts of second-degree sexual assault of a child and one count of child enticement.  Renier also challenges an order denying his motion for postconviction relief.  We affirm.

## BACKGROUND

¶2      This case stems from then-thirty-two-year-old Renier's alleged sexual intercourse with a fifteen-year-old girl in the basement of his Oconto County home and in a hotel room Renier enticed the child to enter.  According to the criminal complaint, police obtained Renier's cell phone records containing numerous text messages of a sexual nature between Renier and the victim, including the following:

> RENIER:  Thank you, Baby Girl.  I can't wait to see you.
>
> [THE VICTIM]:  You're welcome, handsome.  I can't wait to see you too.  I miss you.  My day is going to be so slow cuz that is all I'm going to think about is getting to see you.
>
> RENIER:  I feel the same.  LOL.  I really, really, really like you.  And it should feel wrong but it feels sooo right.
>
> RENIER:  I love cuddling with you.
>
> [THE VICTIM]:  Get your ass over here and give me that hug.  …
>
> RENIER:  OMG
>
> [THE VICTIM]:  [WTH]!
>
> RENIER:  I so want you.

---

[1]  Renier appeared pro se in the circuit court postconviction proceedings.  He continues in that capacity in this court.  Three attorneys represented Renier in the circuit court prior to trial, and two attorneys represented Renier at trial.

[THE VICTIM]: Please OMG your dick is so big, it feels so good I just want you to bang me so hard and grab the sheets with pleasure.

RENIER: I think I have ruined you, LOL.

….

RENIER: OMG you are so tight.

….

[THE VICTIM]: Ya, I don't want you to get in trouble

RENIER: [Y]ou're worth it, once you're sixteen there isn't anything they can really say[.]

RENIER: I want to kiss you and I want to make love with you[.]

Renier was charged with two counts of second-degree sexual assault and two counts of child enticement. Renier received a single jury trial on the four charges in Outagamie County.

¶3    The State's most important evidence at trial came from the victim, who fully testified as to all of the charged crimes. The State corroborated the victim's testimony by proving Renier had sexually fixated on her. It did so in part, through the use of evidence that Renier and the victim had exchanged sexually and romantically explicit text messages on their cell phones.

¶4    The State also relied on Renier's own testimony, as well as evidence that Renier had flowers delivered to the victim at her school before his arrest. Accompanying the flowers were instructions on how to create a cell phone application that would allow Renier and the victim to exchange pictures without actually storing them on their phones.

¶5      The State further corroborated the victim's allegations with the contents of a recorded telephone call between the victim and Renier. The call was recorded with the victim's consent, and she asked Renier three questions: Why did Renier choose her? Did the events mean anything to him or was it just sex? And were they going to do it again? Renier provided inculpatory answers to two of the questions. He told the victim he chose her because he loved her. Renier also said to her regarding the sex, "I didn't plan it."

¶6      Renier's consciousness of guilt was also evidenced, as he told the victim to delete the text messages the two had exchanged. Testimony further established that the victim's difficulty and delay in disclosing her victimization, as well as her emotional responses and attempts to downplay what happened, were all consistent with observed behavior in known child sexual assault victims.

¶7      Renier denied committing the charged crimes. He attempted to explain away the incriminating text messages as simple exchanges of sexually graphic messages that reflected only fantasy and pretend sex. The jury disbelieved Renier, and it found him guilty of both sexual assault charges and one child enticement charge. The circuit court imposed sentences consisting of two years' and four months' initial confinement and five years' extended supervision. Renier, pro se, subsequently filed a WIS. STAT. § 974.02 (2017-18)[2] postconviction motion. Stating the motion was "better suited" for this court to

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

decide, the circuit court denied the motion in a written order.[3] This appeal follows.

## DISCUSSION

¶8 Renier presents a myriad of issues on appeal. At the outset, we note that Renier expresses dissatisfaction with virtually every aspect of his trial, especially the outcome. However, most of the issues Renier presents were not properly preserved for appellate review, and those issues that were preserved lack merit.

¶9 Renier first argues that the State has conceded the merits of his various issues in this court "by the fact that [the State] chose to not respond before the circuit court" to Renier's postconviction motion. However, the circuit court did not request the State's response prior to issuing its opinion. Renier fails to provide citation to legal authority obligating the State to file a response to a pro se postconviction motion in order to preserve its right to oppose appellate relief. We will not consider unsupported or underdeveloped arguments, including those inadequately supported by citation to legal authority. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). In any event, whether we address allegedly forfeited arguments is a matter of our discretion, and lacking

---

[3] We remind the circuit court that we value the court's own analysis and conclusions on issues raised in a postconviction motion. Indeed, a persuasive analysis by the circuit court may prevent an appeal in certain cases. In any event, a cogent analysis by the court helps the parties feel they have been heard and procedural justice has been maintained, In the absence of a meaningful discussion by the circuit court regarding its postconviction decision, we have searched the record to independently determine the factual and legal issues presented, and to further provide procedural justice to the parties.

Renier's developed argument, we decline such review in this instance. *See State v. Kaczmarski*, 2009 WI App 117, ¶¶7-9, 320 Wis. 2d 811, 772 N.W.2d 702.

¶10 Renier next argues he is entitled to a new trial and a sanctions hearing to determine whether the charges should be dismissed on the grounds that his due process rights were violated by the State's alleged failure to preserve text messages. Renier further claims the State "disclosed, twisted, and removed the remaining messages from context to improperly sway the verdict."

¶11 The facts pertaining to this issue arose during Renier's pretrial efforts to exclude evidence of the text messages he had exchanged with the victim. During one of the pretrial motion hearings, a defense witness testified that content appeared to have been deleted from the victim's cell phone. In light of this information, defense counsel confirmed with the circuit court that the defense could cross-examine witnesses regarding texts allegedly deleted from the victim's cell phone, as well as the completeness of individual messages.

¶12 The State's failure to preserve evidence may violate a defendant's right to due process if the State failed to preserve apparently exculpatory evidence, or it acted in bad faith by failing to preserve potentially exculpatory evidence. *See State v. Weissinger*, 2014 WI App 73, ¶¶9-12, 355 Wis. 2d 546, 851 N.W.2d 780. Where the State has failed to preserve potentially useful evidence, the defendant can show bad faith only if the officers were aware of the potentially exculpatory value or usefulness of the evidence they allegedly failed to preserve, and they acted with official animus or made a conscious effort to suppress it. *Id.*

¶13 Renier does not cite this court to any point in the record where he made a constitutional due process objection before or at trial to the alleged destruction of exculpatory evidence from the victim's cell phone. Moreover,

Renier has not challenged his trial counsel's effectiveness on this point. In fact, Renier states in his reply brief to this court that he did not argue ineffective assistance because "his counsel was not ineffective."

¶14 The absence of a proper, timely objection by Renier leaves this court without a sufficient record to determine what, if anything, the State actually destroyed or failed to preserve, and why that evidence would be viewed as exculpatory in any event. And, if the State's conduct resulted in the loss of evidence, this court has no way to determine whether it happened due to the State's bad faith.

¶15 A litigant is required to make a timely motion, objection, or argument that provides the participants with notice of the alleged issues, and provides the circuit court with the opportunity to correct or avoid error in the first instance. *See **State v. Huebner***, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. Renier's failure to properly preserve the issue in this instance results in a forfeiture of the right to review the issue on direct appeal. *See **id.***, ¶¶11-12.

¶16 Renier next argues the circuit court erred by allowing the admission into evidence of Renier's text messages to the victim because such admission violated the Wisconsin Electronic Surveillance Control Law (WESCL). *See* WIS. STAT. §§ 968.27–968.375. Again, Renier fails to cite this court to the point in the record where he objected to the admission of Renier's text messages based on an alleged violation of the WESCL, and Renier has not challenged his trial counsel's

effectiveness on this point. Renier has thus also forfeited his right to review on this issue.[4]

¶17    Renier next argues that if we deem he forfeited the issue regarding admissibility of the text messages under the WESCL, the text messages "should have been excluded from trial due to their unfair prejudice, confusion of the issues, and lack of trustworthiness." *See* WIS. STAT. § 904.03. Renier claims the circuit court "did not allow Renier to present his defense by excluding evidence that would explain the nature and context of his conversations and actions." However, Renier failed to object at trial to admission of the text messages under § 904.03, which gives the circuit court authority to balance the probative value of evidence against other factors, such as unfair prejudice; confusion of issues; misleading the jury; delay; waste of time; or needless presentation of cumulative evidence. And, Renier has again not challenged his trial counsel's effectiveness on this point. He has thus forfeited his right to review on this issue.

¶18    Nevertheless, we note the parties fully litigated the admissibility of the text message evidence before trial based upon Renier's objection to their authenticity, resulting in the circuit court's decision to admit some of the messages. Here, sufficient circumstantial evidence existed to authenticate the text messages admitted at trial. The cell phones were directly associated with Renier

---

[4] Renier did object to the admission of the *contents* of the recorded telephone conversation with the victim under the WESCL. The circuit court correctly admitted that evidence under the one-party consent provisions of the WESCL. Renier's objections to the admission of his text messages focused on authenticity and a ***Daubert*** challenge to expert testimony regarding how law enforcement recovered the messages from the cell phones. *See* ***Daubert v. Merrell Dow Pharms.***, 509 U.S. 579, 597 (1993). Renier also improperly cites an unpublished per curiam decision of this court that did not involve text messages, and which was subsequently reversed by our supreme court.

and the victim, and they contained communications between the two parties. The likelihood of communications coming from a different cell phone was minimal. The romantic and sexually explicit nature of the text messages provided further circumstantial evidence that Renier and the victim sent the messages to each other. *See State v. Baldwin*, 2010 WI App 162, ¶55, 330 Wis. 2d 500, 794 N.W.2d 769. The circuit court properly exercised its discretion by concluding the text messages possessed sufficient indicia of authenticity.

¶19 Renier next argues that critical evidence was excluded because of the circuit court's "misinterpretation" of the rape shield law. WISCONSIN STAT. § 972.11 generally prohibits the introduction of any evidence of the complainant's prior sexual conduct regardless of the purpose. *See State v. Ringer*, 2010 WI 69, ¶25, 326 Wis. 2d 351, 785 N.W.2d 448. The statute was enacted to "counteract outdated beliefs that a complainant's sexual past could shed light on the truthfulness of the sexual assault allegations." *Id.* The statute's broad prohibition is subject to three exceptions. The only exception relevant to the present matter, however, is the one that permits the introduction of evidence of "prior untruthful allegations of sexual assault made by the complaining witness." *See* WIS. STAT. § 972.11(2)(b)3.

¶20 At the final pretrial hearing, defense counsel told the circuit court that he expected the State to present evidence that Renier taught the victim how to perform sex. The prosecutor denied any intent to admit such evidence. Defense counsel then asserted that one of the witnesses at trial "is an ex-boyfriend who she claimed raped her, and so we'll—I mean we think it's relevant that she's had intercourse prior to meeting [Renier.]" The victim denied ever making a false allegation of sexual assault. She admitted believing she had become pregnant by a former boyfriend. The former boyfriend testified the victim once told him

"someone on her dad's side sexually assaulted her." Moreover, the boyfriend testified that he believed her. After hearing from these witnesses, the court concluded that the defense had failed to make a sufficient showing that the victim made a prior false allegation of sexual assault. The court therefore excluded any evidence of the victim's prior sexual conduct.

¶21 Unsubstantiated allegations—or generalized evidence regarding the victim's prior sexual history unrelated to her specific allegations against Renier—have no tendency to make any fact of consequence to the determination of Renier's guilt or innocence more or less probable. *See* WIS. STAT. §§ 904.01 and 904.02. An alleged prior untruthful allegation of sexual assault must also be demonstrably untruthful. Here, Renier failed to bring forth any evidence from which the circuit court could conclude that a jury might reasonably find it more likely than not that the victim made a false allegation of sexual assault. The victim denied ever making a false accusation. Her former boyfriend testified that although the victim said she had been sexually assaulted by someone on her father's side—Renier was a friend of her father—the former boyfriend said he believed her. No other witness testified that the victim ever made and later recanted an allegation of sexual assault. The absence of any proof of recanted allegations weighs against a jury's reasonable ability to find it more likely than not that a complainant made a prior false allegation of assault. *See **Ringer***, 326 Wis. 2d 351, ¶37. The circuit court properly exercised its discretion in excluding evidence of the victim's prior sexual conduct.

¶22 For the first time on appeal, Renier argues that the former boyfriend actually committed the present assault. To the extent Renier is suggesting his case involves mistaken identity, he fails to explain how that could have happened given the evidence introduced at trial. Regardless, we will not consider issues raised for

the first time on appeal. ***Wirth v. Ehly***, 93 Wis. 2d 433, 443, 287 N.W.2d 140 (1980).

¶23 Renier next argues the circuit court improperly excluded documentary evidence regarding the condition of Renier's penis at the time of the charged offenses. During cross-examination of the victim, Renier's trial counsel asked her if she noticed anything unusual or odd about Renier's penis. She answered: "No. I don't know what you're asking." Renier later testified that he had genital warts medically removed from his penis shortly before the charged crimes occurred, leaving it scabbed and discolored. His counsel asked Renier if he had tried to obtain a medical opinion from his physician as to whether he could perform intercourse after the procedure. This exchange prompted an objection from the State. On redirect, Renier produced a document purportedly from his physician that contained the following statement:

> This is to certify that Chad A[.] Renier was under my care [o]n 11-5-2014 for treatment of genital warts. Possible side [e]ffects of treatment using Liquid Nitrogen are scabbing, redness and irritation. Patient did not follow up so it is unknown if any of these symptoms occurred.

¶24 The State challenged the admissibility of this documentation based on its lack of authentication and lack of the forty-day notice of intent to offer patient health care records required to avoid the need for authentication by a medical records custodian. *See* WIS. STAT. § 908.03(6m)(b). The circuit court refused to admit the document. Eventually, the parties entered into a stipulation that stated, "Mr. Renier had genital warts frozen on November 5th of 2014. However, there is no medical record indicating that this would have precluded Mr. Renier from having sexual intercourse or that the surgery would have caused any visible marks."

11

¶25 Renier argues the document purportedly from his physician was "bona-fide rebuttal evidence," and he assumes that label somehow guarantees admissibility. However, "bona-fide" or not, rebuttal evidence must satisfy the rules governing admissibility. WIS. STAT. § 901.01. In this case, the document purportedly from his physician was hearsay and lacked foundation, and was therefore inadmissible.

¶26 Moreover, Renier's trial counsel expressly told the circuit court that the defense simply wanted to dispel any inference that no medical records existed to bolster Renier's testimony. By virtue of the parties' stipulation, the jury was required to accept as fact that Renier had genital warts removed from his penis by freezing, as he contended. But the jury had no obligation to accept as fact—as Renier hoped they would—that the procedure inhibited his ability to have sexual intercourse, or left him so disfigured that the testimony of seeing nothing unusual about Renier's penis was incredible. The jury had the critical issue squarely before it: did Renier sexually assault the victim, or was it all a pretend sexual fantasy? The court's rulings regarding the condition of Renier's penis did nothing to prevent Renier from advancing his chosen theory of defense. That Renier's theory of defense did not persuade the jury has nothing to do with the condition of his penis and everything to do with his explanation for his conduct. Accordingly, any possible error on this issue would have been harmless in any event.

¶27 Renier next argues that evidence from his cell phone should have been suppressed due to the police "repeatedly violating his constitutional rights." In this regard, Renier's appellate arguments generally assert various violations of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *State v. Jennings*, 2002 WI 44, 252 Wis. 2d 228, 647 N.W.2d 142. Once again, Renier's arguments lack specific reference to record objections or facts developed at a pretrial hearing, and Renier

does not even specify precisely which evidence he believes should have been suppressed. The defense had filed a boilerplate pretrial suppression motion seeking to exclude Renier's statement to police on the day of his arrest, but the motion did not allege specific *Miranda* violations.

¶28 Renier has not provided this court with a sufficient record to determine the actual facts and circumstances surrounding any custodial statements Renier may have made without the benefit of *Miranda* warnings, as well as precisely how and when Renier allegedly invoked his *Miranda* right to counsel. Objections noted without proper citation to the record on appeal regarding facts developed at pretrial hearings are not properly preserved. And Renier once again does not challenge trial counsel's effectiveness on these points. Renier has forfeited his right to review on these issues.

¶29 To the extent Renier argues the circuit court erred by denying his Fourth Amendment challenge to the seizure of his cell phone from his wife, we specifically reject his argument. The court conducted a suppression hearing, and the State presented evidence that police knew his cell phone contained evidence of the crimes and specifically feared the possibility the evidence contained on the phone would be destroyed or disrupted. Renier's wife testified that when the police arrested him, Renier gave her his watch and keys, but left his cell phone on the bar. She put it in a sweatshirt pocket. Shortly afterward, the police re-entered the tavern, asked her to come outside, told her to give them Renier's phone, and told her to empty her pockets. She complied, revealing the cell phone, which police seized.

¶30 The circuit court found as historical fact that when the police arrested Renier, his wife took possession of his cell phone. The court also found

13

that his wife turned the phone over to police after they raised the possibilities of her arrest for obstruction and child protective services involvement in the case. The court concluded that although Renier had standing to challenge the seizure of his phone from his wife,[5] exigent circumstances justified the warrantless seizure of the phone because of the possibility of destruction or loss of the evidence on the phone.

¶31 Renier's challenge is to the seizure of his cell phone, not the search of it. After seizing it, the police obtained a warrant before searching the phone's contents. The circuit court found that the phone likely contained incriminating evidence, and that the phone could "have easily been destroyed absent immediate intervention." When police have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the officer may seize the property pending issuance of a warrant to examine its contents if the exigencies of the circumstances demand it. *See United States v. Place*, 462 U.S. 696, 701 (1983).

¶32 The police had probable cause to believe that Renier's cell phone contained evidence of a crime. The victim herself had told police that she texted Renier multiple times. A person who possesses a cell phone can quickly and easily destroy the device itself or the data it contains. *See Riley v. California*, 573 U.S. 373, 388 (2014). Renier's wife could have erased text messages and call logs, or physically destroyed the cell phone altogether if police had not seized it. Renier insists the police believed Renier's wife "was helping them at the time, so it was unreasonable that [police] would have believed or suspected that [Renier's

---

[5] We need not reach the issue of standing.

wife] would delete the phone." Contrary to Renier's insistence, the State did not have to prove that his wife was going to destroy evidence. The risk of destruction is the relevant inquiry, and that risk is high when evidence is located on a cell phone. *Id.* The circuit court's finding that the phone's likely incriminating evidence could "have easily been destroyed absent immediate intervention" is not clearly erroneous. Exigent circumstances justified the warrantless seizure of Renier's cell phone from his wife.

¶33 Renier next argues that prosecutorial misconduct "throughout this case" was "pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential …." Among other things, Renier claims the prosecutor improperly testified during trial, improperly vouched for the victim's credibility, and "skated into excluded evidence." Serious prosecutorial misconduct that "poisons the entire atmosphere of the trial" and brings unfairness into reasonable question may violate a defendant's right to due process. *See State v. Lettice*, 205 Wis. 2d 347, 352-53, 556 N.W.2d 376 (Ct. App. 1996).

¶34 But, like other constitutional rights, the defendant must properly preserve such claims of misconduct by timely objection and argument. *See United States v. Olano*, 507 U.S. 725, 731 (1993). Once again, Renier fails to provide any record citation to constitutional due process objections at trial regarding alleged prosecutorial misconduct, and Renier has not challenged his trial counsel's effectiveness on this point. The right to appellate review on this issue has been forfeited.

¶35 Finally, Renier mentions once in passing WIS. STAT. § 752.35, which authorizes this court's discretion in exceptional cases to reverse a circuit

court judgment or order "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." However, Renier does not discuss the relevant legal standards regarding discretionary reversal or make any effort to explain why we should deem his case exceptional. *See State v. McKellips*, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258. In any event, it does not appear from the record that the real controversy has not been tried or that it is probable that justice has miscarried. Renier is not entitled to a new trial in the interest of justice.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.