STATE of Wisconsin, Plaintiff-Respondent,

v.

Pierre R. CONNER, Defendant-Appellant.

Court of Appeals

*No. 2011AP2298–CR. Submitted on briefs June 5, 2012.
—Decided August 14, 2012.*

2012 WI App 105

(Also reported in 821 N.W.2d 267.)

233

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Justin C. Haskell*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. CURLEY, P.J.   Pierre R. Conner appeals the judgment convicting him of one count of attempted armed robbery with the use of force as party to a crime, and also appeals the order denying his postconviction motion. Conner argues that statements he made to police during an interrogation in which he unequivocally requested counsel should have been suppressed. We agree with Conner; he not only unequivocally requested counsel, but he also did not reinitiate questioning thereafter. We therefore conclude that the trial court erred as a matter of law in denying Conner's motion to suppress, and reverse the conviction and subsequent order.

## BACKGROUND

¶ 2.   This case concerns the April 2 and 3, 2009 Milwaukee Police interrogations of Conner regarding his alleged involvement in the robbery and homicide of

236

Shavanty Jackson. A police witness put Conner at the scene of the crime, and Conner, upon learning that police were looking for him, agreed to be questioned. Conner's interrogations were recorded. The facts below derive from the suppression hearing testimony and the trial court's subsequent oral rulings following that testimony; the transcript of Conner's interrogation testimony provided by an independent secretarial transcriber; and the audio recordings of Conner's interviews with detectives on April 2 and 3, 2009—all of which are properly in the record and all of which were relied upon by the trial court in making its determination.

### *(1) Conner is interrogated on April 2, 2009.*

¶ 3. During one particular police interrogation, which took place late in the evening on April 2, 2009, Conner requested an attorney approximately three times within a period that spanned less than ten minutes on the audio recording.

#### *(a) Conner's first request for counsel.*

DETECTIVE: The only way that you can prove that you were remorseful about this is to tell us how this went. That's— that's the bottom line. Just— just, just to be honest about how this went down.

CONNER: When— when, when can I see an attorney? When can I see an attorney? When? How soon?

DETECTIVE: You don't want to talk to us no more?

CONNER: I want to talk to ya'll, man, but ya'll don't want to hear what I have to say.

DETECTIVE: Yeah, we listening [inaudible]. When we know that what you're saying is not the truth, we

237

can't let you just keep on lying. That, that ain't gonna happen. You done did that for too long. If, if you don't want to talk to us no more, that's fine. Is that what you're saying? You want an attorney, you don't want to talk to us anymore?

CONNER: I want to talk to ya'll, but I want an attorney present.

DETECTIVE: Ok.

CONNER: So, how soon can that be arranged? Today?

DETECTIVE: Nope, it won't be, it won't be today. Sit tight.

¶ 4.   After the questioning detective advised Conner to "[s]it tight," the interrogation, as documented in the audio recording in the record, became inaudible for about a minute, and then continued with the detective advising Conner of his *Miranda*[1] rights. According to Detective Marco Salaam, one of the detectives who questioned Conner at this time, Conner had reinitiated questioning during the inaudible portion of the recording:

[DEFENSE COUNSEL]:   [Conner] did request a lawyer around 11:10 p.m., correct—

[SALAAM]:   I believe so.

[DEFENSE COUNSEL]: —on April 2 and then you ended the questioning, correct?

[DETECTIVE SALAAM]:   Correct.

[DEFENSE COUNSEL]:   And then you started to take him back to prisoner processing and he then, you

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

238

know, in this taking him back, that's when he said, okay, I will talk to you, correct?

[DETECTIVE SALAAM]:   Correct.

[DEFENSE COUNSEL]:   So he initiated contact with you despite the request for a lawyer that first time?

[DETECTIVE SALAAM]:   Correct.

The interrogation then continued.

*(b) Conner's second request for counsel.*

DETECTIVE:   Do you want to talk to me, talk to us again?

CONNER:   That's why we're here [inaudible].

DETECTIVE:   So, just so I know, you did request an attorney, right? Correct?

CONNER:   Not at this present time.

DETECTIVE:   No, I mean earlier. Earlier you said you wanted—

CONNER:   Yes, I, I would like one.

¶ 5.   At this point, the detective did not cease questioning Conner, and the interrogation continued:

DETECTIVE:   Ok, But now, are you willing to talk to us without an attorney?

CONNER:   Yes, right now [inaudible].

*(c) Conner's third request for counsel.*

¶ 6.   After a few more minutes of conversation, the following exchange took place:

DETECTIVE:   Talk to us. [Inaudible.]

CONNER:   I want to consult with a lawyer and talk to the lawyer, ok? You know. And then, man, it's not going to take that long for me to call ya'll.

DETECTIVE: Ok.

CONNER: Just give me some time.

DETECTIVE: Alright.

CONNER: Just give me some time, and I'll be [inaudible].

DETECTIVE. Okay.

### (2) Conner is questioned again on April 3, 2009.

¶ 7.   After Conner indicated that he wanted to consult with a lawyer for the third time, questioning ceased and Conner was returned to his cell. The April 2, 2009 interrogation ended at approximately 11:30 p.m. Conner never called the detectives back to continue the interrogation. Yet at about 4:00 a.m. the next morning —April 3—Conner was taken from his cell and brought into an interrogation room. The interrogating detective, David Chavez, said something to the effect of, "They said you wanted to talk to us again; is that right?" According to Detective Chavez, Conner responded, "I didn't tell Detective Salaam or [any]body else that." Chavez pressed him again, asking if he would talk. Conner eventually relented, waived his *Miranda* rights, and made a series of incriminating statements. He was consequently charged with felony murder.[2]

### (3) Conner moves to suppress statements made to police.

¶ 8.   After Conner was charged with felony murder for his alleged involvement in the robbery and

---

[2] According to the criminal complaint, Conner accompanied Charlie Johnson in what was supposed to be an armed robbery of Shavanty Jackson, a known drug dealer. Johnson had a loaded gun; Conner had a gun without any bullets in it.

homicide, he filed a motion to suppress the statements he made to detectives. The trial court held a suppression hearing. Detective Salaam testified, as did Detective Chavez.

¶ 9.  At the hearing, Detective Salaam confirmed on cross-examination that Conner was only willing to continue the interrogation after speaking with a lawyer:

DEFENSE COUNSEL:   But after he requested a lawyer the [third][3] time, he never initiated any contact with you?

DETECTIVE SALAAM:   Well, I interpreted that as the – the reinitiation was him stating – or restating multiple times that he was willing to talk later.

DEFENSE COUNSEL:   After he talked to a lawyer.

DETECTIVE SALAAM:   That's not how I interpreted it.

DEFENSE COUNSEL:   Well, that's what he said, right?

DETECTIVE SALAAM:   That's correct.

¶ 10.  Detective Salaam further testified that Conner never made a call to officers to reinitiate the interrogation. Yet Detective Salaam told Detective Chavez that Conner was willing to talk later.

¶ 11.  Detective Chavez testified that early in the morning of April 3, 2009, he went to the holding cell

Unfortunately for all parties involved, things went awry and ended with Johnson shooting Jackson.

[3] At the suppression hearing, defense counsel's question references Conner's requesting a lawyer a "second" time; given the context of the conversation in the suppression hearing transcript as well as the parties' description of events, however, we understand counsel and the detective to be referring to Conner's "third" or final request for counsel, not the "second" request described above.

and told Conner something to the effect of "[t]hey said you wanted to talk to us again." According to Chavez, Conner responded, "I didn't tell Detective Salaam or [any]body else that."

### *(4) Conner's motion is denied; Conner appeals.*

¶ 12.　After Detectives Salaam and Chavez testified and the parties made their final arguments, the trial court made the following findings:

> Then towards the end of that continued discussion, Mr. Conner says something to the effect that he wants to consult with a lawyer and to talk to a lawyer, okay; and goes on and then says, you know, and then, it's not gonna take that long for that to happen and for me to call you, something to that effect.
>
> The next thing that continues to go on, there's two separate instances immediately after that where Mr. Conner says just give me some time, just give me some time, and the second time he says and I'll be calling you, or something to that effect.

¶ 13.　The trial court found that Conner said he wanted to consult with a lawyer, but ruled that there was never an unequivocal request for counsel. According to the trial court, Conner's statements were "back and forth of I want a lawyer, I don't want a lawyer, I want a lawyer, I don't want a lawyer." The trial court also found that Conner was responsible for reinitiating the interrogation.

¶ 14.　Thus, Conner's motion to suppress was denied. Conner filed a motion to reconsider, which was also denied. He subsequently pled guilty to one count of attempted armed robbery with use of force as party to a crime, and was sentenced. After sentencing, Conner filed a postconviction motion, which was also denied. Conner now appeals. Further facts will be developed below as necessary.

242

## ANALYSIS

### *Standard of Review*

¶ 15.    The sole issue on appeal is whether the trial court properly denied Conner's motion to suppress. "Ordinarily, a guilty plea waives all nonjurisdictional defects and defenses." *State v. Hampton*, 2010 WI App 169, ¶ 23, 330 Wis. 2d 531, 793 N.W.2d 901, *rev. denied*, 2011 WI 29, 332 Wis. 2d 279, 797 N.W.2d 524. However, "[a] narrowly crafted exception to this rule exists," "which permits appellate review of an order denying a motion to suppress evidence, not withstanding a guilty plea." *See id.*; *see also* Wis. Stat. § 971.31(10) (2009–10).[4] We review the denial of Conner's motion to suppress under a two-part standard of review: we uphold the trial court's findings of fact unless they are clearly erroneous, but review *de novo* whether those facts warrant suppression. *Hampton*, 330 Wis. 2d 531, ¶ 23.

¶ 16.    Specifically, we must determine whether Conner unequivocally invoked his right to counsel during interrogation, and, if he did so, whether he later reinitiated questioning. "[A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981). This rule requires two distinct inquiries. First, we must determine whether the accused actually invoked his

---

[4] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

right to counsel. *See, e.g., id.* (whether accused "expressed his desire" for, or "clearly asserted" his right to, the assistance of counsel); *Miranda v. Arizona,* 384 U.S. 436, 444–45 (1966) (whether accused "indicate[d] in any manner and at any stage of the process that he wish[ed] to consult with an attorney before speaking"). Second, if the accused did indicate he wanted an attorney, we must determine whether he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. *See Edwards,* 451 U.S. at 485, 486 n.9. The *Edwards* rule "ensures that any statement made in subsequent interrogation is not the result of coercive pressures," and "is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights.' " *Minnick v. Mississippi,* 498 U.S. 146, 150–51 (1990) (citation omitted).

■

¶ 17.  We review the sufficiency of Conner's invocation of his right to counsel under a two-pronged standard. *See State v. Jennings,* 2002 WI 44, ¶ 20, 252 Wis. 2d 228, 647 N.W.2d 142. First, we will uphold the trial court's findings of fact unless they are clearly erroneous. *Id.* Second, we independently review the application of constitutional principles to those facts. *Id.* We review whether Conner initiated further communication with police and whether he voluntarily, knowingly, and intelligently waived his Fifth Amendment *Miranda* right to counsel under the same two-pronged standard. *See State v. Hambly,* 2008 WI 10, ¶ 71, 307 Wis. 2d 98, 745 N.W.2d 48.

***Conner unequivocally requested counsel before 11:30 p.m. on April 2, 2009.***

■■

¶ 18.  We turn first to the issue of whether Conner unequivocally requested counsel during his interroga

tion. A suspect's request for counsel "must be unambiguous—in other words, the suspect 'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.' " *State v. Linton*, 2010 WI App 129, ¶ 8, 329 Wis. 2d 687, 791 N.W.2d 222 (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). "If the suspect makes an ambiguous or equivocal reference to an attorney, officers need not stop questioning the suspect and may clarify the comment." *Id.*; *see also State v. Ward*, 2009 WI 60, ¶ 43, 318 Wis. 2d 301, 767 N.W.2d 236.

¶ 19. As noted, the trial court determined that Conner's requests for an attorney were not unequivocal:

> [W]hen we look at the totality of the circumstances here, there is a lot of vacillating on Mr. Conner's part. He on a number of occasions beforehand said he might want to talk to a lawyer and then insisted on talking after that.
>
> There was one particular point where he said that he wanted to talk to a lawyer unequivocally . . . and then he reinitiated almost immediately afterwards.
>
> Then towards the end of that continued discussion, Mr. Conner says something to the effect that he wants to consult with a lawyer and talk to a lawyer, okay; goes on and then says, you know, it's not going to take that long for that to happen and for me to call you, something to that effect.
>
> The next thing that continues to go on, there's two separate instances after that where Mr. Conner says just give me some time, just give me some time, and the second time he says and I'll be calling you, or something to that effect.
>
> Taking that into account with everything that had gone on before, it is not in my view unequivocal. It's the

■■■■■■■■■■■■

same as what had happened before, it's back and forth of I want a lawyer, I don't want a lawyer, I want a lawyer, I don't want a lawyer.

■

¶ 20. We disagree; the record makes clear that Conner unequivocally requested an attorney. The first time Conner requested counsel, he said "I want to talk to ya'll, but I want an attorney present." Immediately thereafter, he asked "how soon can that be arranged? Today?" The second time Conner requested counsel he said, "Yes, I, I would like one," referring to an attorney. The third time Conner requested counsel he said, "I want to consult with a lawyer and talk to the lawyer, ok? You know. And then, man, it's not going to take that long for me to call ya'll." There is nothing equivocal or ambiguous about this third request. Thus, we do not have to assess on our *de novo* review whether the first two requests were ambiguous, as the trial court concluded, or clear. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on narrowest possible ground). Conner's request was similar to the defendant's unequivocal request in *Edwards*, where the defendant said he wanted an attorney before making a deal. *See id.*, 451 U.S. at 479. In contrast, Conner's requests differ significantly from *Davis*, where a defendant who continued to answer questions after saying, " '[m]aybe I should talk to a lawyer,' " was found not to have made an unequivocal request for counsel. *See id.*, 512 U.S. at 455, 462 (emphasis added). It also differs from *Ward*, where a defendant who asked whether she should have a lawyer during questioning was found not to have made an unequivocal request for counsel. *See id.*, 318 Wis. 2d 301, ¶¶ 29, 43.

¶ 21. The trial court's determination and the State's arguments that Conner's requests were equivocal confuse the issue because they relate to whether Conner reinitiated questioning. *See Edwards*, 451 U.S. at 484 (a valid waiver of right to counsel "cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation even if he has been advised of his rights").[5] The court's descriptions about the "back and forth" of "I want a lawyer, I don't want a lawyer," on April 2, 2009, and its subsequent discussion of Conner's willingness to talk to police at about 4:00 a.m. the following morning all relate to the issue of whether Conner reinitiated questioning; they do not render the requests themselves inadequate as a matter of law. Once Conner clearly and unequivocally requested counsel, he had no obligation to re-assert his previously-invoked right. *See id.* at 484–85.

¶ 22. Similarly, Conner's comments about his willingness to talk to police "later" do not render his requests ambiguous. Specifically, we refer to the following testimony, which the trial court characterized as "something to the effect that [Conner] wants to consult with a lawyer and talk to a lawyer, ok; goes on and then says, you know, it's not going to take that long for that to happen and for me to call you, something to that

---

[5] *See also Smith v. Illinois*, 469 U.S. 91, 98 (1984) (per curiam) ("Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked. *Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together.*") (emphasis added).

effect," and "[t]he next thing that continues to go on, there's two separate instances after that where Mr. Conner says just give me some time, just give me some time, and the second time he says and I'll be calling you, or something to that effect."

> CONNER: I want to consult with a lawyer and talk to the lawyer, ok? You know. And then, man, it's not going to take that long for me to call ya'll.
>
> DETECTIVE: Ok.
>
> CONNER: Just give me some time.
>
> DETECTIVE: Alright.
>
> CONNER: Just give me some time, and I'll be [inaudible].
>
> DETECTIVE. Okay.

¶ 23. As Detective Salaam explained during the suppression hearing, the comments about talking "later" pertain to whether Conner reinitiated questioning. Additionally, it is clear that Conner is saying he would be willing to talk "later," *after he spoke with an attorney:*

> DETECTIVE SALAAM: Well, I interpreted that as the – the reinitiation was him stating – or restating multiple times that he was willing to talk later.
>
> DEFENSE COUNSEL: After he talked to a lawyer.
>
> DETECTIVE SALAAM: That's not how I interpreted it.
>
> DEFENSE COUNSEL: Well, that's what he said, right?
>
> DETECTIVE SALAAM: That's correct.

248

¶ 24. In sum, Conner unequivocally requested counsel. After his third request for counsel, which occurred shortly before 11:30 p.m. on April 2, 2009, police should have ceased questioning. *See Edwards*, 451 U.S. at 484–85; *see also State v. Jennings*, 2002 WI 44, ¶ 26, 252 Wis. 2d 228, 647 N.W.2d 142 ("[T]he police must immediately cease questioning a suspect who clearly invokes the *Miranda* right to counsel at any point during custodial interrogation."). Indeed, the record shows that police did stop questioning him, further evincing the clarity of the request. We therefore hold that the trial court erred as a matter of law in determining that Conner's requests were ambiguous or equivocal.

### *Conner did not reinitiate questioning after 11:30 p.m. on April 2, 2009.*

¶ 25. While the trial court found that Conner reinitiated questioning after each request for counsel, we again direct our attention to Conner's third and final request, as it is only after that request that Conner made the incriminating statements he sought to suppress. *See Blalock*, 150 Wis. 2d at 703.

¶ 26. The Supreme Court, in *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), set forth two different tests for determining whether a suspect has initiated a discussion or conversation with police officers. As stated by the four-justice *Bradshaw* plurality, a suspect initiates communication when he or she asks questions or makes statements "that under the totality of the circumstances 'evince[] a willingness and a desire for a generalized discussion about the investigation.'" *See Hambly*, 307 Wis. 2d 98, ¶ 73 (citing *Bradshaw*, 462 U.S. at 1045–46).

As stated by the four-justice *Bradshaw* dissent, the suspect must instigate " 'dialogue about the subject matter of the criminal investigation.' " *See Hambly*, 307 Wis. 2d 98, ¶ 74 (citing *Bradshaw*, 462 U.S. at 1053 (Marshall, J., dissenting)) (emphasis omitted). Under these tests, "even suspect-initiated conversation does not constitute *a priori* proof of waiver" of the right to counsel.[6] *See State v. Harris*, 199 Wis. 2d 227, 250–51, 544 N.W.2d 545 (1996); *see also Bradshaw*, 462 U.S. at 1044 (even if the suspect initiates contact after invocation, "the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation"). "A valid waiver of an asserted right 'cannot be established by showing only that [the suspect] responded to further police-initiated custodial interrogation even if he has been advised of his rights.' " *Harris*, 199 Wis. 2d at 250–51 (citation omitted; brackets in *Harris*). "[I]f the authorities reinitiate contact, it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the inherently com-

---

[6] The Wisconsin Supreme Court has not chosen either the *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), plurality or the dissent test for determining whether an accused has reinitiated questioning by police. *See State v. Hambly*, 2008 WI 10, ¶ 75, 307 Wis. 2d 98, 745 N.W.2d 48 ("[U]ncertainty persists about what constitutes a suspect's 'initiating' further communication with law enforcement. We are free to choose either the plurality's or the dissent's test. We need not make the choice in the present case. Our analysis and conclusion in the present case would not differ under either the plurality's or dissent's statement of the test for a suspect's 'initiation' of further communication or dialogue."). Similarly, we do not choose between the *Bradshaw* tests, as our analysis and conclusion in Conner's case would be the same under either test.

pelling pressures and not the purely voluntary choice of the suspect." *Id.* at 251 (citation and internal quotation marks omitted).

¶ 27.   Regarding the third request for counsel, the trial court determined that Conner reinitiated questioning on two occasions:   first, directly after requesting counsel shortly before questioning ended at about 11:30 p.m. on April 2, 2009, when he asked for "some time"; and second, when he demonstrated willingness to talk with detectives at about 4:00 a.m. the next morning, April 3, 2009:

> We then go on to the beginning of the actual confession where Detective[s] Chavez and Caballero speak to Mr. Conner at around four o'clock in the morning or so, 4:08 in the morning, and there was some discussion in that particular set of circumstances almost immediately about the fact that Mr. Conner said that he told [Detective] Salaam that he would call them if he wanted to talk, and then he goes on because he said I was tired in a sofa. He said I was tired. He didn't have any paperwork, nothing. Then he goes on to discuss something about a table, pulling it away, and Detective Salaam getting loud. Then he said something about cooling off. And then it says:   That's when one of the officers that called me up to get you so we can talk later and I say yeah.
>
> There's some indication there that he had told one of the officers that he would continue to talk.
>
> It then goes on, Detective Chavez says:   Do you feel like talking right now?
>
> And he said – Mr. Conner says, he just jumps right in and says:   Yeah, and then just continues to recite his rights.
>
> Taking all of these matters into account with the totality of the circumstances, which I have to look at,

you can't take this out of context. If you hear the word "lawyer," that doesn't automatically mean that the questioning gets stopped.

The bottom line is, is that if these detectives wanted to disregard Mr. Conner's rights about having a lawyer, they would have continued to push him and question him when he asked for a lawyer at the beginning of Detective Salaam and Detective Tarver's interrogation. They stopped the questioning there. He then reinitiated immediately afterwards; then he equivocated at the end of that testimony saying: I want to talk to a lawyer but I'm gonna call you back, I'm gonna talk to you, I'm just gonna take some time, I'm gonna talk to you, it's gonna take some time.

Then when he talks to Detective Chavez, he says, well, I was tired at the time, I was tired in the sofa, and doesn't even say what are you doing here? Get out of here. I want a lawyer. I didn't call my lawyer. He's the one who chimes in and starts telling the detective what his rights are. And does a pretty darn good job of it.

That's how I hear this and that's how I take all of this. That's pretty much where we're at.

¶ 28.  We disagree. Neither Conner's statements about having "some time" nor his willingness to answer questions the next morning meet the tests for reinitiation set by the Supreme Court.

¶ 29.  First, Conner's comments about needing "some time" made directly after requesting counsel just before 11:30 p.m. on April 2, 2009, did not "evince[] a willingness and a desire for a generalized discussion about the investigation," nor did they instigate "dialogue about the subject matter of the criminal investigation." *See Hambly*, 307 Wis. 2d 98, ¶¶ 73–74 (citations, emphasis and internal quotation marks omitted).

These comments were, as noted, made immediately after Conner requested counsel, and directly related to his request:

DETECTIVE: Talk to us. [Inaudible.]

CONNER: I want to consult with a lawyer and talk to the lawyer, ok? You know. And then, man, it's not going to take that long for me to call ya'll.

DETECTIVE: Ok.

CONNER: Just give me some time.

DETECTIVE: Alright.

CONNER: Just give me some time, and I'll be [inaudible].

DETECTIVE. Okay.

¶ 30.  Indeed, Detective Salaam admitted at the suppression hearing that Conner's request for time was in direct relation to his request for counsel; that is, Conner was only willing to "talk later" after he had consulted with an attorney:

DETECTIVE SALAAM: Well, I interpreted that as the – the reinitiation was him stating – or restating multiple times that he was willing to talk later.

DEFENSE COUNSEL: After he talked to a lawyer.

DETECTIVE SALAAM: That's not how I interpreted it.

DEFENSE COUNSEL: Well, that's what he said, right?

DETECTIVE SALAAM: That's correct.

253

¶ 31.   In addition, after Conner requested an attorney and made the comment about needing time, police honored his request, which shows that police interpreted his comments about needing time as part of the request for an attorney. Moreover, both the timing and substance of Conner's request and comments about needing time differ from *Hampton*, a recent case in which we held that the defendant did in fact reinitiate questioning, *see id.*, 330 Wis. 2d 531, ¶ 43. In *Hampton*, the defendant requested counsel, but after the police packed their things and began to leave, he told them that he did not want them to leave, and then requested a specific amount of time to think things over and pray before resuming the interrogation:

> HAMPTON: I'm not trying to be rude or nothing. I just want to talk to a lawyer.
>
> DETECTIVE HEIER: Any specific lawyer you want us to call?
>
> HAMPTON: No. I don't know.

The next twenty seconds of the audio tape reflects sounds suggesting that the detectives were packing up to leave, a suggestion confirmed by the following exchange initiated by Hampton:

> HAMPTON: Are you guys gonna leave?
>
> DETECTIVE HEIER: Yeah. If you wanna talk to a lawyer, we're not going to talk to you . . . . You're in charge . . . . If you want a lawyer, I respect that and I'll honor that.

Detective Heier then told Hampton that a police officer was going to come in to photograph the cuts on Hampton's hands. Hampton responded:  "I just don't want you guys to leave right now." Detective Heier

254

explained to Hampton that because Hampton had requested a lawyer, the detectives could not talk to him. Detective Heier told Hampton that he could retain a public defender if he could not afford to hire an attorney. Detective Heier also offered to reread Hampton the *Miranda* rights.

After taking a few minutes to consider his options, Hampton stated: "I really do want to talk to you guys . . . I just need some time." Hampton requested thirty to forty minutes alone to read the Bible, pray, and talk to God before he continued to talk to detectives.

*See id.*, ¶¶ 10–13 (ellipses in *Hampton*).

¶ 32. In contrast to Conner's request for an attorney and "some time," which both occurred before police ceased their questioning, Hampton asked for more time after the officers had honored his request for counsel. *See id.*, ¶¶ 11–13 (officers begin packing up immediately upon request for attorney; thereafter Hampton requests more time). The officers in *Hampton* explained that they were obligated to stop questioning and had begun to pack their things before Hampton asked for more time. *Id.* Additionally, the substance of Hampton's request for more time was far more indicative of "a willingness and a desire for a generalized discussion about the investigation" than Conner's. *See Hambly*, 307 Wis. 2d 98 ¶ 73 (citation and internal quotation marks omitted). Hampton not only requested more time, but explained that he needed thirty to forty minutes "to read the Bible, pray, and talk to God." *See Hampton*, 330 Wis. 2d 531, ¶ 13. He also told officers that he did not want them to leave. *Id.*, ¶¶ 12, 43.

¶ 33. Second, Conner's willingness to talk with police at about 4:00 a.m. the morning of April 3, 2009, does not constitute reinitiation. The recording and

corresponding transcript do not make clear whether Conner actually initiated the 4:00 a.m. interrogation:

> OFFICER: You said they – if you want to talk to us again. Is that right? Huh?
>
> CONNER: I INAUDIBLE that I, I will call them and if I wanted to talk to you, because INAUDIBLE I was tired in a sofa. I'm tired, and INAUDIBLE like didn't have no paperwork, nothing. INAUDIBLE this – there was a table, and you pulled it away. You knew I was tired, and you was getting loud and stuff, man, they –
>
> OFFICER: Who was getting loud?
>
> CONNER: Marco.
>
> OFFICER: INAUDIBLE
>
> CONNER: Man, dude got loud, man. [cross talk] didn't INAUDIBLE now, and disrespect him. So I INAUDIBLE on my way out of there, he calmed down a little bit. And INAUDIBLE think you're so tired, which is cool off and then. And that's one of the officers that called me up to get you so we can talk later. And I say, "Yeah."
>
> OFFICER: You feel like talking right now?
>
> CONNER: Yeah. I INAUDIBLE going to read them rights. I figured it to myself . . . .

¶ 34. We cannot discern from this evidence whether Conner initiated the conversation at any point between 11:30 p.m. on April 2 and 4:00 a.m. on April 3;[7]

---

[7] In its ruling, the trial court also commented on the fact that portions of the audio recordings were inaudible:

I wish that the police department would invest a few extra dollars and get some better recording equipment so we can actually hear

256

what Conner's words very strongly suggest, however, is that an officer in fact called him to continue the interrogation. In any event, the only concrete conclusion we can draw from this evidence is that Conner " 'responded to further police-initiated custodial interrogation,' " which is not enough to establish that he reinitiated questioning. *See Harris*, 199 Wis. 2d at 251 (citation omitted).

¶ 35.   The suppression hearing testimony of the interrogating officers, on the other hand, makes very clear that Conner was in fact *not* willing to reinitiate conversation with police. For example, Detective Salaam testified that Conner never made a call to officers to reinitiate the interrogation. Similarly, Detective Chavez testified that early in the morning of April 3,

what's going on better than we can, but it is what it is, I take out of it what I heard, we had some clarifying testimony from the detectives and that's where we're at.

This court is in complete agreement with the trial court regarding the need for more accurate equipment, particularly in cases such as this, where a homicide was being investigated and where the State had the burden of showing that Conner waived his right to counsel. *See Bradshaw*, 462 U.S. at 1044 ("[E]ven if a conversation taking place after the accused has 'expressed his desire to deal with the police only through counsel' is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation.").

We also remind all trial judges who rely upon audio recordings to make their decisions that they must clearly list those portions of the recording on which they relied. Additionally, if portions of the recording transcript indicate that the recording is inaudible—as was the case here—courts must indicate whether they relied upon information gleaned from their own review of the recording that the court reporter who transcribed the recording may not have heard.

2009, he went to the holding cell and told Conner "[t]hey said you wanted to talk to us again." But according to Chavez, Conner responded, "I didn't tell Detective Salaam or [any]body else that."

¶ 36. Thus, while the officers who took Conner into the interrogation room on April 3, 2009, may have done so under the belief that Conner had at some point reinitiated questioning, or at the very least had expressed a desire to do so, the facts do not support this belief. The record shows that after he requested counsel, Conner did not ask to talk to officers, and did not tell Detective Salaam that he wanted to talk to police later without counsel.

¶ 37. Therefore, because Conner unequivocally requested counsel and because he did not reinitiate questioning by police, his subsequent statements should have been suppressed. *See Edwards*, 451 U.S. at 484–85, 486 n.9. We conclude that the trial court erred as a matter of law by not suppressing the statements, and that Conner's conviction and postconviction motion must be reversed.

*By the Court.*—Judgment and order reversed.