COURT OF APPEALS
DECISION
DATED AND FILED

August 26, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP1271-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF3414

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DEVANTE CORDERO DOSS,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN and MARK A. SANDERS, Judges. *Affirmed*.

Before White, C.J., Colón, P.J., and Donald, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Devante Cordero Doss appeals from a judgment of conviction for first-degree reckless homicide and an order of the circuit court denying Doss's postconviction motion.[1]   On appeal, Doss argues that the statement he gave to detectives should have been suppressed.  For the reasons set forth below, we affirm.

## BACKGROUND

¶2    Doss was charged with one count of first-degree reckless homicide, one count of possession of a firearm by a felon, and one count of possession of a firearm contrary to an injunction, all with the habitual criminality enhancer, following a road rage incident on September 19, 2020, that led to the death of Fabian Guzman.

¶3    As alleged in the criminal complaint, Doss's vehicle—a Chevy Malibu—collided with the vehicle in which Guzman was a passenger.  Both vehicles pulled over and came to a stop on the side of the road.  Doss exited his vehicle, yelled at the driver of the other vehicle, fired several shots into the vehicle, and then returned to his vehicle and sped away.  Police recovered approximately ten fired cartridge casings from the street.  Doss was eventually arrested on September 23, 2020, at a Motel 6, where police found the Chevy Malibu that Doss was believed to have been driving and the semi-automatic assault-style rifle Doss was believed to have used.  The criminal complaint further alleged that Doss had been identified by the driver of the other vehicle who

---

[1] The Honorable Stephanie Rothstein denied Doss's pre-trial motion to suppress, accepted Doss's guilty plea, entered the judgment of conviction, and imposed sentence.  The Honorable Mark A. Sanders entered the order denying Doss's postconviction motion.  We refer to both as the circuit court.

survived the incident, and the incident had been recorded by cameras positioned throughout the city, including a camera from a city bus that recorded the shooting itself.

¶4 Following his arrest, detectives spoke to Doss on three occasions: first on the morning of September 24, 2020; second on the evening of September 24, 2020; and third on the morning of September 26, 2020.[2] There is no dispute that Doss was read his ***Miranda***[3] rights on each occasion. The third time detectives spoke to Doss, Doss admitted to firing the shots that killed Guzman.

¶5 Doss filed a motion to suppress the statements he made in the second and third interrogations following his arrest. The parties agreed that Doss invoked his right to counsel in the second interrogation, and the State indicated that it would not seek to use the second interrogation, except potentially as rebuttal evidence. Thus, the focus moved to the admissibility of the third interrogation.

¶6 To that end, the State presented testimony from one of the detectives who questioned Doss during the third interrogation. The detective testified that he and another detective retrieved Doss from his cell on the morning of September 26, 2020, to collect a DNA sample from Doss. On the way to the interview room, Doss began asking questions about his case, and the detective told Doss to hold his questions until they reached the interview room. Once they became situated in the

---

[2] While the record contains references that the circuit court at one point had three discs, one for each interview, the record is limited to one disc containing a recording of the third interrogation. "We are bound by the record as it comes to us." ***Fiumefreddo v. McLean***, 174 Wis. 2d 10, 26, 496 N.W.2d 226 (Ct. App. 1993). Therefore, despite Doss's extensive quotation of the second interrogation, our discussion is limited to the third interrogation.

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

interview room, the detectives discussed collecting the DNA sample, but the conversation, at Doss's insistence, returned to Doss's questions about his case. The detectives informed Doss that they could not speak to him about his case unless he wanted to talk because Doss requested counsel during the second interrogation. However, Doss's questions continued, and the detectives believed that Doss wanted to talk to them. Accordingly, the detectives confirmed that Doss understood that he had a right to an attorney, that he had invoked that right to an attorney, and asked if Doss still wanted to talk to the detectives about his case anyways. Doss initially denied that he was the shooter, but he eventually admitted to firing the shots that killed Guzman.[4]

¶7 Doss also testified at the hearing on the motion to suppress. In his testimony, he denied that he had any conversation with the detectives on the way to the interview room about a DNA sample or that he asked any questions about updates on his case. Instead, Doss testified that his only question was whether he was going to be able to speak to a lawyer. Doss further testified that he had been read his *Miranda* rights, but he did not understand what his rights were and that he had the right to remain silent. Rather, Doss stated that the interrogation "contained compelling pressures" that "undermined [his] ability to resist." On

---

[4] In his first interrogation, Doss claimed that a friend of his rented his car to an unknown individual on the day of the shooting. He later claimed that he did not actually rent his car to anyone, but he still did not have his car at the time of the shooting. By the second interrogation, Doss claimed that the Chevy Malibu was his sister's car, and he was at work at the time of the shooting. At the time of the third interrogation, Doss claimed that someone who looked like him and who he knew as "Six" or "Chitown" was the shooter, and Doss was lying down in the backseat at the time of the shooting. Doss claimed that "Six" ran off after the shooting, which was why Doss drove the Chevy Malibu after the shooting. Eventually, Doss stated that he "was going to be truthful" and admitted to being the shooter.

cross-examination, Doss admitted that he can be seen in the recording telling the detectives several times that he wanted to talk to them without a lawyer.

¶8      Following the testimony, the circuit court denied the motion.  In so doing, the circuit court noted that it had watched the tape and that this was a credibility issue.  The circuit court continued that Doss presented "clearly contradictory positions" because he testified that he did not understand his rights and felt pressured and helpless yet appeared relaxed, inquisitive, and engaged in the recording.  Indeed, the circuit court described Doss's questions as "pointed" and "attempting to draw out of the detectives information that they had that maybe he doesn't know to determine how far the investigation has gone, what they know, [and] if they've watched certain videos."[5]  Overall, the circuit court found that the interaction was "polite" and "even tempered."

¶9      The State additionally raised the issue of phone calls and letters from Doss to witnesses in which Doss attempted to ensure that witnesses against him would not come to court testify, and the State sought to introduce these communications as evidence of Doss's consciousness of guilt.[6]  On the morning of trial, the circuit court found that the State could introduce the communications

_____

[5] The record reflects that there were several sources of video footage of the events of September 19, 2020, including video footage from a city bus recording the shooting and video footage from security cameras placed throughout the city as a result of the Democratic National Convention that recorded the Chevy Malibu driving through the city.  Doss inquired if the detectives had watched these videos because Doss insisted that, if the detectives had watched these videos, he would no longer be in custody.

[6] In fact, Doss was under several orders restricting his access to discovery materials and revoking his phone and mail privileges in an effort to restrict his ability to contact witnesses. Doss was restricted to communications and visits with his attorney.  The record further reflects that, following the revocation of his phone and mail privileges, Doss had other inmates contact the witnesses.

during the trial as evidence of Doss's consciousness of guilt. Doss then pled guilty to one count of first-degree reckless homicide with use of a dangerous weapon, and the circuit court subsequently sentenced Doss to 60 years of imprisonment, bifurcated as 40 years of initial confinement and 20 years of extended supervision.

¶10 Doss filed a postconviction motion in which he argued that the statement he made in his third interrogation should have been suppressed and he was entitled to plea withdrawal. More specifically, Doss argued that the statement from his third interrogation should have been suppressed because, by the time he made the statement, he had been in custody for more than 48 hours without a judicial determination of probable cause in violation of *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), and any statement he made was invalid as a matter of law. He further argued that his trial counsel was ineffective for failing to raise the argument. In response, the State provided proof—in the form of a completed CR-215 form—that a judicial determination of probable cause was made on September 25, 2020, and there was no *Riverside* violation for trial counsel to challenge. Consequently, in reply, Doss argued that he would not have provided a statement to police in his third interrogation had he been aware that the CR-215 had been processed. The circuit court denied Doss's motion. Doss appealed.

¶11 Following the conclusion of briefing in this matter, this court issued its decision in *State v. Robinson*, 2024 WI App 50, 413 Wis. 2d 534, 12 N.W.3d 535, in which we concluded that the Sixth Amendment right to counsel attaches once the CR-215 form is processed and the judicial determination of probable cause is made. *Id.*, ¶¶1, 56. As a result, we ordered supplemental briefing on

6

whether our decision in *Robinson* applies to Doss's case given that he sought to suppress a statement made the day following the processing of his CR-215 form.

## DISCUSSION

¶12    On appeal, Doss argues that the circuit court erroneously found that his statement was admissible and he contends that his statement was obtained in violation of his right to counsel.  Specifically, he argues that the detectives did not honor his invocation of his right to counsel because the police continued to talk to Doss despite Doss's several requests for counsel.  Doss argues that the need to obtain his DNA was nothing more than a "ruse" to approach him and make him talk.  He further argues that his subsequent waiver of his right to counsel was not valid (1) because, prior to making his confession, he was not made aware of the fact that the CR-215 form had been processed and there had been a judicial finding of probable cause in his case in the absence of his confession and (2) because of the pressures of systemic poverty.

¶13    As a threshold matter, we note that Doss raised an argument in his postconviction motion below that his statement should be suppressed as a result of a *Riverside* violation and that his trial counsel was ineffective for failing to raise this as an argument in the motion to suppress.  As noted, Doss again raises on appeal an argument that his statement should be suppressed, but he does not base his argument on a *Riverside* violation or ineffective assistance of trial counsel.  Rather, he cites to WIS. STAT. § 971.31(10) (2023-24),[7] which states that "[a]n order denying a motion to suppress evidence or a motion challenging the

_____

[7] All references to the Wisconsin Statutes are to the 2023-24 version.

admissibility of a statement of a defendant may be reviewed upon appeal from a final judgment or order." We, therefore, consider any arguments of a *Riverside* violation and ineffective assistance of trial counsel to be abandoned because they have not been renewed as arguments on appeal. *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned.").

¶14 Thus, we turn to Doss's arguments raised on appeal. We review the circuit court's decision on Doss's motion to suppress under a two-part standard of review. *State v. Conner*, 2012 WI App 105, ¶15, 344 Wis. 2d 233, 821 N.W.2d 267. "[W]e uphold the [circuit] court's findings of fact unless they are clearly erroneous, but review de novo whether those facts warrant suppression." *Id.*

¶15 Doss argues that, pursuant to *Edwards v. Arizona*, 451 U.S. 477 (1981), his statement should have been suppressed because the detectives approached him and reinitiated questioning in violation of his right to counsel. We disagree.

¶16 In *Edwards*, the United States Supreme Court held that

> an accused, … having expressed his [or her] desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him [or her], unless the accused himself [or herself] initiates further communication, exchanges, or conversations with the police.

*Id.* at 484-85. "This rule requires two distinct inquiries." *Conner*, 344 Wis. 2d 233, ¶16. "First, we must determine whether the accused actually invoked his [or her] right to counsel." *Id.* "Second, if the accused did indicate he [or she] wanted an attorney, we must determine whether he [or she] (a) initiated further

discussions with the police, and (b) knowingly and intelligently waived the right he [or she] had invoked." *Id.*

¶17 There is no dispute in this case that Doss invoked his right to counsel, and our analysis focuses on the second part of the inquiry. Here, we begin with the tests articulated by the Supreme Court in *Oregon v. Bradshaw*, 462 U.S. 1039 (1983), to determine "whether a suspect has initiated a discussion or conversation with police officers." *Conner*, 344 Wis. 2d 233, ¶26. The first test provided by the four-justice plurality states that "a suspect initiates communication when he or she asks questions or makes statements 'that under the totality of the circumstances evince[] a willingness and a desire for a generalized discussion about the investigation.'" *Id.* (alteration in original; citation omitted). The second test provided by the four-justice dissent states that "the suspect must instigate 'dialogue about the subject matter of the criminal investigation.'" *Id.* (citation omitted). We conclude that, under either test, Doss's claim fails.

¶18 Importantly, the record reflects that Doss initiated the further communications and conversations about his case, specifically with his questions about the videos and whether anyone had watched them. While it may be that the detectives approached Doss on the morning of September 26, 2020, the detectives did so to collect a DNA sample and not to talk to Doss about his case. In fact, the detective testified at the suppression hearing that the detectives repeatedly reminded Doss that he had invoked his right to counsel, and the detective further testified that if Doss had not been the one to start asking questions about his case, the detectives would have strictly kept the interaction to collecting a DNA sample.

¶19 By contrast, the defendant in *Edwards* was approached by detectives for the sole purpose of further interrogation, the defendant told detectives that he

did not want to talk, and the defendant was told that he had to talk. ***Id.***, 451 U.S. at 479-80. Doss's case does not present the same situation. As the circuit court found below, Doss initiated the conversation about his case and was asking questions for his own benefit to determine what detectives already knew. "The ***Edwards*** rule 'ensures that any statement made in subsequent interrogation is not the result of coercive pressures,' and 'is designed to prevent police from badgering a defendant into waiving his previously asserted ***Miranda*** rights.'" ***Conner***, 344 Wis. 2d 233, ¶16 (citations omitted). Therefore, we conclude that the detectives did not approach Doss on September 26, 2020, and reinitiate questioning in violation of his right to counsel.

¶20 In further support of his argument, we note that Doss cites to ***State v. Wentela***, 95 Wis. 2d 283, 290 N.W.2d 312 (1980), for the proposition that the detectives were required to afford him an opportunity to obtain counsel and the detectives were required to take reasonable steps to obtain counsel for him. Doss's reliance on ***Wentela*** is misplaced as it no longer represents the current law. *See* ***State v. Jennings***, 2002 WI 44, ¶¶6, 33, 252 Wis. 2d 228, 647 N.W.2d 142. Thus, we are unpersuaded by Doss's citation to ***Wentela***.

¶21 Turning to the last part of the inquiry, Doss argues that any subsequent waiver of his right to counsel in the third interrogation was not valid. He argues first that his waiver was not knowing because he was never informed that the CR-215 form was processed on September 25, 2020, and he argues second that his waiver was coerced because of systemic poverty. Doss has failed to adequately develop either argument, and therefore, we decline to address them further. ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶22     However, we recognize that any argument regarding the validity of Doss's waiver of his right to counsel is likely meritless considering the overall "polite" and "even tempered" tone of the interrogation, the fact that Doss was not handcuffed, the breaks with which Doss was provided, and the repeated efforts to have Doss confirm that he understood his rights and wanted to talk. *See State v. Hampton*, 2010 WI App 169, ¶¶32-36, 43-44, 330 Wis. 2d 531, 793 N.W.2d 901 ("The State establishes an 'implicit waiver' when it demonstrates that 'a *Miranda* warning was given and that it was understood by the accused' and that the accused then went on to make an uncoerced statement." (citation omitted)).

¶23     We finally address the topic of the supplemental briefing, and we conclude that *State v. Robinson* does not apply.  Doss's arguments, both below and on appeal, focus on suppression of his statement because of a violation of his Fifth Amendment right to counsel.  *Robinson* addresses the attachment of the Sixth Amendment right to counsel following the processing of the CR-215 form. *Id.*, 413 Wis. 2d 534, ¶1.  While the two rights are related, they are nonetheless distinct rights.  *See Montejo v. Louisiana*, 556 U.S. 778, 786-88 (2009) (discussing the importation of Fifth Amendment right to counsel principles to the Sixth Amendment right to counsel principles).  Doss's arguments for suppression of his statement refer to the CR-215 form—the form that underlies our conclusion in *Robinson*—but this shared reference to the CR-215 form does not amount to a fully developed claim of a violation of the right to counsel under the Sixth Amendment.  Moreover, a valid waiver of the Fifth Amendment right to counsel constitutes a valid waiver of the Sixth Amendment right to counsel.  *Montejo*, 556 U.S. at 787-88.  Therefore, we ultimately conclude that *Robinson* does not apply.

**CONCLUSION**

¶24 In sum, we conclude that Doss's statement during the third interrogation was admissible, and the circuit court did not erroneously deny Doss's motion to suppress his statement. Accordingly, we reject Doss's arguments and affirm.[8]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.

---

[8] As a result of our conclusion today, we do not reach the State's alternative argument that any error in denying Doss's motion to suppress was harmless. **State v. Blalock**, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").